IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: Motion to Compel Compliance With Subpoena Directed to SECUR, LLC | Civil Action |
| I.C.E. SERVICE GROUP, INC. and I.C.E. PACKAGING COMPANY, LLC, | Misc. Action No. _____ |
| Petitioners, | |
| v. | |
| PACTEC, INC. and SECUR, LLC, | |
| Respondents. | |

**I.C.E. SERVICE GROUP, INC. AND I.C.E. PACKAGING COMPANY, LLC'S MOTION AND MEMORANDUM TO COMPEL NON-PARTY <u>SECUR LLC's COMPLIANCE WITH SUBPOENA</u>**

I.C.E. Service Group, Inc., I.C.E. Packaging Company, LLC (collectively "ICE"), pursuant to Rule 45 of the Federal Rules of Civil Procedure, respectfully seek to compel compliance with a subpoena directed to SECUR, LLC, an entity located in the Western District of Pennsylvania at 409 Broad Street, Suite 250, Sewickley, PA 15143 ("SECUR"), served on October 1, 2019, for the production of documents and inspection of premises (products) as more fully set forth in the subpoena attached hereto as Exhibit 1 ("Subpoena"). In support thereof, ICE states as follows:

**I.   BACKGROUND**

The ICE Petitioners are currently defendants in patent infringement litigation pending in the Eastern District of Tennessee, brought by Plaintiff PacTec, Inc. ("PacTec"), captioned Civil Action No. 1:18-cv-00118-TWP-CHS ("the Tennessee Litigation").[1] In the Tennessee Litigation, PacTec has asserted that ICE has infringed several of its patents directed at large industrial and

---

[1] The June 1, 2018 Complaint from the Tennessee Litigation is attached as Exhibit 2.

nuclear waste containment bags. There are also various counterclaims by ICE, including tortious interference with contract, trade secret theft, and unfair competition. SECUR is not a party to the Tennessee Litigation.

ICE is in the business of providing to customers, including government contractors, industrial, nuclear, oil and gas and other waste hauling and waste containment products and services. I.C.E. Packaging is the manufacturer of the containment bags used for this waste hauling, while I.C.E. Services supplies planning, design, logistics and related services to customers in the course of their waste hauling services. The containment bags are provided by I.C.E. Services to customers in the scope of their waste hauling services. PacTec also manufactures and supplies soft-sided packaging (i.e., bags) to contain waste. However, PacTec does not supply waste hauling services. It frequently has to work with one or more other companies (eg: in the logistics providing business) in bidding for commercial and governmental contracts that involve waste hauling services. Often times, that company with whom they jointly market and bid is SECUR. The competing parties herein therefore submit bids to the same contractors for the same contracts, often times to the same government contractor performing a nuclear decommissioning project for the Department of Energy.

Through the course of discovery, the existence of PacTec's business relationship with non-party SECUR has become known to ICE. For example, as can be seen on SECUR's website http://www.securllc.com/strategic-partnerships/pactecsecur/, SECUR and PacTec have what SECUR labels "a strategic partnership." See Exhibit 3.[2] On this same website, SECUR advertises

---

[2] "**PACTEC** is the leader in the design and manufacturing of flexible packaging for hazardous and radioactive wastes around the globe. Their in-house engineering, research and development, quality control, NQA-1 program, product testing, extensive certifications and 15-plus US and British patents merge with their three manufacturing plants and distribution facilities to provide products and services that are second to none.

a long list of PacTec's products, which are allegedly covered by one of more of the asserted patents in the Tennessee Litigation. Therefore, at a minimum, SECUR, through its own website, is marketing, distributing, selling, and/or offering for sale PacTec's purportedly patented waste containment bag products and methods. Please see the joint PACTEC - SECUR logo:



ICE is entitled to determine, through appropriate discovery, the nature and extent of this PacTec and SECUR business relationship, and specifically to discover documents related to and created under this business relationship. The relationship between PacTec and SECUR is relevant to many issues in the Tennessee Litigation, including but not limited to, PacTec's claim for lost profits, reasonable royalty, all damages related inquiries, as well as ICE's trade secret theft and tortious interference counterclaims. PacTec and SECUR not only promote these joint sales and bid on-line, but they have also used the joint logo and other corporate markings on, for example, waste hauling intermodal containers which are out in the field and in interstate commerce already. See Photographs attached as Exhibit 4, which were taken during an inspection in the Tennessee Litigation. These markings certainly imply or state to the interstate relevant marketplace that PacTec and SECUR are the joint owners of and/or suppliers of these containers and that their commercial mark is an indication of joint business ventures and job bidding and completion.

---

**PACTEC** products feature patented zipper closures that are safer and faster than other methods that utilize ties to close and secure for shipping. We can also custom design any type of package or over-dimensional packages required, and provide drawings or prototyping for review before manufacturing begins."

Any sales that are offered and/or completed pursuant to the PacTec/SECUR relationship would be related, inter alia, to damages, including any alleged lost profits and any calculations in a reasonable royalty analysis. ICE is entitled to all documents relating to and surrounding any such sale and/or offer for sale. ICE is entitled to know how PacTec/SECUR are selling the allegedly patented products for purposes of defending the infringement action as they are direct competitors of ICE, and there are also unfair competition counterclaims and other business tort claims asserted by ICE in the Tennessee Litigation. These types of documents include, but are not limited to, request for proposals ("RFPs"), responses to RFPs, designs, certificates of conformance related to the packaging, internal communications related to the RFP, communications with the customer related to the RFP, contracts, change orders, drawings, delivery schedules, tracking reports, invoicing, and any other relevant documents ("RFP-type documents").

On October 1, 2019, ICE served SECUR with the Subpoena for documents that included 26 requests for documents, which requested documents related to the business relationship between PacTec and SECUR, as well RFP-type documents. Exhibit 1. Additionally, the Subpoena included a request for inspection of premises relating to containment bags purchased by or otherwise acquired by SECUR, specifically, a request to inspect "flexible waste containment bags purchased for project Luckey D&D on/around March 17, 2018."[3] Included

---

[3] **In the Tennessee Litigation, PacTec had served SECUR with a similar subpoena for inspection of bags on February 14, 2019**. See Exhibit 5. Similarly to the present situation, SECUR never responded to PacTec or allowed inspection by the parties. **However, PacTec did not seek enforcement of that subpoena.** On July 23, 2019, PacTec' counsel informed ICE of the status regarding enforcement of the subpoena, "SECUR Subpoena.  Your queries concerning the SECUR subpoena seek privileged information.  Without waiving the applicable privileges, we believed in mid-February that SECUR was the customer who purchased ICE bags for use with the Luckey project.  In mid-March, ICE finally made certain bags available for inspection, including a 'replica' of the Luckey bag.  For this reason, we elected to not follow up with

with the Subpoena was a copy of the Protective Order entered in the Tennessee Litigation.

SECUR filed written objections to the Subpoena on October 16, 2019. See Exhibit 6. Notably, SECUR's objections do not state that these documents do not exist. The objections cite undue burden as a basis for refusal to produce documents; that the documents requested would be cumulative and duplicative of documents that could be obtained from a party to the litigation; and that the requests were not reasonably related to any claim or defense in the Tennessee Litigation. These objections were never substantiated with any relevant legal authority. SECUR did NOT file any Motion to Quash this Subpoena – presumably because they have no valid basis to do so. SECUR produced two documents to ICE with its objections. See Exhibit 7 (a single image of a banner having both PacTec and SECUR logos) and Exhibit 8 (an 8-page brochure, identifying PacTec under "partnerships" that contains information similar to the above-described SECUR website).

Counsel for ICE arranged a telephonic meet and confer with SECUR's counsel on October 25, 2019 to discuss the objections and to determine if more documents would be forthcoming. During that meet and confer, SECUR's counsel stated that the only documents that his client would have in its possession would be duplicative of documents that ICE could obtain from PacTec. ICE did not agree that such an objection was proper under the Federal Rules. Notwithstanding, in an effort to obtain relevant documents from SECUR, during that telephone discussion and in subsequent emails, ICE's counsel identified types of documents that would clearly be in SECUR's possession and would not be duplicative of documents that it (ICE) could

---

SECUR after they failed to respond to the subpoena.  We are not inclined at this juncture to pursue a 'certificate of compliance.'  It was our subpoena, and we view it as our prerogative as to whether we take any further enforcement action on the subpoena.  We may elect to re-issue a new subpoena to SECUR if we learn of any new information suggesting that they possess any of the accused ICE bags."

obtain from PacTec. These attempts to compromise and therefore limit the scope of the document production have been unsuccessful in that SECUR is still unwilling to produce any documents to ICE. The types of documents for example, that SECUR would have in its possession that would **NOT** be duplicative of the ones that PacTec would have in its possession include:

1. **Internal SECUR communications,** including but not limited to emails regarding the Tennessee Litigation, PacTec, PacTec's products, any defendant in the litigation, any patent, any third party containment bag, any government contract involving soft-sided packaging, any project relevant to the services described on your website http://www.securllc.com/strategic-partnerships/pactecsecur/, AECOM, Waste Control Specialists and/or the Department of Energy at the SPRU (Separation Process Research Unit) in Albany, New York, government contractors Portage, Inc. and/or North Wind Group regarding the Department of Energy's work at the site in Luckey, OH.

2. **External SECUR communications (i.e., to parties other than PacTec or any party to the litigation) regarding the litigation**, PacTec, PacTec's products, any defendant in the litigation, any patent, any third party containment bag, any government contract involving soft-sided packaging, any project relevant to the services described on your website http://www.securllc.com/strategic-partnerships/pactecsecur/, AECOM, Waste Control Specialists and/or the Department of Energy at the SPRU (Separation Process Research Unit) in Albany, New York, government contractors Portage, Inc. and/or North Wind Group regarding the Department of Energy's work at the site in Luckey, OH.

On November 4, 2019, counsel for SECUR wrote a letter to ICE's counsel addressing the two types of documents delineated above. See Exhibit 9. In that letter, SECUR's counsel produced only one internal SECUR email. Instead of producing a collection of relevant documents, SECUR's counsel continued to refuse production and stated the following reasons for objection:

> The first category of documents addresses internal Secur communications. Secur has undertaken a limited manual review of electronic information to determine whether responsive documents exist. An example document in the possession of Secur is attached hereto. Quite frankly, we do not believe this document is relevant to any claim or defense in the lawsuit (and thus is not responsive), but are producing it to give you an understanding of the types of internal communications that may exist. Given the small size of Secur and the proximity of the working environment, it is unlikely there is a large number of internal communications.
>
> With respect to the second category of documents, during our telephone call you indicated you thought Secur and PacTec have made joint bids on projects. I have confirmed no joint bids were submitted. I have also reviewed several bid proposals submitted by Secur for various projects, and to the extent PacTec is even mentioned in a bid proposal it is merely as a vendor. As such, we do not believe these documents are relevant to any claim or defense in the lawsuit.

As can be seen in the above-cited passage, SECUR has self-admittedly not performed an investigation to determine the scope of documents that would be relevant in response to the Subpoena ("limited manual review" and "Given the small size of Secur and the proximity of the working environment, it is unlikely there is a large number of internal communications"). And yet, it objects that such production would be burdensome. In the Tennessee Litigation, ICE is a "small business" but has nonetheless produced over 40,000 documents in discovery. Therefore, not only is SECUR refusing to produce documents, it is refusing to even identify the population of documents that might be relevant pursuant to the Subpoena. It is only guessing as to the number of internal communications. Further, it is difficult to determine how counsel for SECUR is able to determine what is "relevant" in a complex patent lawsuit with numerous counterclaims in Tennessee in which said Counsel has no role. ICE's response to SECUR's objection has demonstrated relevance and lack of duplication of documents.

Finally, through an email exchange on November 19, 2019 and confirmation by telephone on November 20, 2019, counsel for SECUR confirmed that NO inspection of the premises (containment bags) would be allowed. The date that ICE had requested for inspection

has passed (November 20, 2019) without any effort to reschedule to a mutually agreeable time by SECUR's counsel despite ICE's request for rescheduling. SECUR has not complied with the Subpoena nor has it given ICE proper explanation for its refusal to allow inspection. SECUR has not filed a motion to quash. ICE's attempts to limit the scope of documents to documents that would not be duplicative of documents that would be in PacTec's possession have not resulted in SECUR producing any documents. Therefore, that offer of compromise is no longer being offered by ICE to SECUR. ICE is seeking compliance with all the document requests and the inspection pursuant to the Subpoena.

## II.     LEGAL STANDARD

Under the Federal Rules of Civil Procedure, subpoenas are issued from the court where the action is pending, and motions to enforce compliance with subpoenas are addressed to the court where compliance is required. Fed. R. Civ. P. 45(a)(2). Thus, the Subpoena was served on third party SECUR in the Tennessee Litigation, but is being enforced herein as SECUR is located in Sewickley, PA.

ICE's Counsel prepared the Subpoena to SECUR in accordance with the Federal Rules of Civil Procedure which provide that each subpoena shall, "command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises" Fed. R. Civ. P. 45(a)(iii).

Accordingly, Fed. R. Civ. P. 45 sets forth that any person, including a non-party, upon the proper issuance of a subpoena, may be required to testify or produce certain documents and things. "[T]he reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)." *Syposs v. United*

*States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998). "A request for discovery . . . should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Snowden v. Connaught Lab.*, 137 F.R.D. 336, 341 (D. Kan. 1991).

Rule 45(a)(1)(D) states that a command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding party to permit inspection, copying, testing, or sampling of the materials. Fed. R. Civ. P. 45(a)(1)(D).

"A witness may not disregard a subpoena he has not challenged by a motion to quash." *Halawani v. Wolfenbarger*, Case No. 07-15483, 2008 WL 5188813, at *12 (E.D. Mich. Dec. 10, 2008) (citing *Haney v. Woodward & Lothrop, Inc.*, 330 F.2d 940 (4th Cir. 1964)). "Although a subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nonetheless an act in defiance of a court order and exposes the defiant witness to contempt sanction." *Id.*

As required by Federal Rule of Civil Procedure 37(a)(1), counsel for ICE certify that they have conferred in good faith with counsel for SECUR on multiple occasions in an attempt to amicably resolve this discovery dispute and obtain the requested documents and inspection without involving the Court. However, ICE counsel's attempts have been unsuccessful.

### III.   ANALYSIS

Without any motion to quash to guide it, ICE is left to determine the nature of SECUR's objections from its continued refusals. Counsel for SECUR seems to be relying on three reasons to object to producing documents and for refusing inspection of relevant containment bags in its possession pursuant to the Subpoena: 1) undue burden; 2) duplicative of documents that can be obtained from a party to the litigation, i.e., Plaintiff PacTec; and 3) relevance.

First, as to undue burden, SECUR makes general statements that the burden and expense is not something that should be imposed upon a nonparty. SECUR defines itself as being "small size[d]." Exhibit 9. There is no further detail given about the nature of the undue burden, nor any details as to the size of SECUR. This argument is akin to arguing that a "small" nonparty should <u>never</u> have to produce documents pursuant to a subpoena. That is simply not the actual rule or intent of Rule 45, which squarely applies to nonparties, even ones that are "small." As mentioned above, ICE is a "small business" and yet has produced over 40,000 documents and numerous containment bags for inspection in the Tennessee Litigation. Further, SECUR is a joint venture partner or "Strategic partner" with Plaintiff PacTec which is by no definition a "small business."

Undue burden is to be assessed in a case-specific manner considering "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1979)). Courts must "balance the need for discovery against the burden imposed on the person ordered to produce documents," and the status of that person as a non-party is a factor. *Id.*

ICE has clearly demonstrated the relevance of the documents requested. The ongoing business relationship between SECUR and PacTec is evidenced by SECUR's own website and is relevant to properly assessing infringement, patent validity (the principals of SECUR have a long history in the waste hauling and containment bag industry), licensing, royalties, damages and to several of the counterclaims in the present case. From the SECUR website (http://www.securllc.com/who-we-are/) comes the following historical statement which supports the belief by ICE that there are relevant documents, drawings, designs and products that would

be relevant to the prior art and other validity issues that have been raised on the Tennessee Litigation by ICE:

> The experience of this team goes back over 35 years with hands-on work remediating, managing and transporting millions of tons of waste materials from many different industry and government facilities. Starting in 1981, our waste management and logistics experience created many waste industry firsts.
>
> In 1994 **SECUR's** founders, Jennifer and John Evanko, established MHF Logistical Solutions, a successful rail transport, asset-based logistics company. Their pioneering use of rail and intermodal transportation services, innovative packaging options and transfer facilities for wastes of all types are still in use more than 20 years later.
>
> Upon information and belief, the SECUR/PacTec relationship began some time in 2017.

Therefore, the time period of requested relevant documents is governed by the nature of the ongoing business relationship between SECUR and PacTec. If the two entities began their business relationship in 2017, then documents pursuant to the business relationship would begin around 2017 and continue to the present. Therefore, the requested documents listed in the Subpoena are limited by date. Had SECUR performed any investigation into these requests for documents pursuant to the Subpoena, it would have realized that the requests were *reasonably* limited to date.

ICE was also reasonable in only requesting one type of bag for inspection. See Exhibit 1 (Subpoena requesting inspection of premises relating to "flexible waste containment bags purchased for project Luckey D&D on/around March 17, 2018").

SECUR's letter of November 4th also mentioned the possibility of ICE paying for SECUR's production costs.

> The burden and expense of any further review and production is not something that should be imposed upon a nonparty such as Secur. Should your clients desire further review and production, the expectation is your clients would bear the cost of such. I would be pleased to speak with you further about this.

Exhibit 9.

Subsequent attempts to determine the details of that proposal have resulted in continual refusal by SECUR to cooperate with ICE. Because SECUR has not even determined the scope of the population of documents that exist, ICE cannot determine the cost of assisting in this production. Furthermore, because ICE has had to incur legal expenses in trying to enforce compliance with the Subpoena, by bringing the present action, ICE is less inclined now to assist in paying for such production costs.

Next, SECUR seems to be objecting to producing any documents, without referencing any relevant authority, claiming that ICE can seek similar discovery from PacTec and thus concludes any documents in SECUR's possession would only be duplicative. This argument fails on many levels. First, SECUR makes this conclusory statement of duplicity without undergoing any investigation into the type of documents in its possession and without then comparing those to documents in PacTec's possession. Nor is there any way reasonable manner in which to perform such a hypothetical comparison – because how could SECUR know the full scope and nature of the documents in PacTec's possession?

Document productions today on the large scale are done with keyword searches and predictive coding. It is almost impossible to know the scope of a company's unproduced documents and therefore ICE should not be forced to guess or assume (or take Counsel's unsupported assumption) that any documents in SECUR's possession would also be in PacTec's possession and have actually been produced. A party is also allowed to check the credibility of a party's document production by subpoenaing third parties to determine a more complete universe of documents.

As admitted by SECUR's counsel, it has only performed "a limited manual review." Exhibit 9. Furthermore, the fact that there may be some duplicity, if SECUR can even prove

duplicity exists, does not relieve SECUR of its obligation to produce documents pursuant to Rule 45. The fact that materials exist in a non-party's possession is on its own relevant. Simply deeming documents duplicative without any basis is not a proper objection to producing documents pursuant to federal subpoena. ICE is entitled to the subpoenaed documents regardless of duplicity.

Finally, SECUR's counsel appears to be making relevance determinations, which is not appropriate to the present inquiry, but nonetheless, will be addressed.[4] Despite the clear label of "strategic partnership" and other joint venture indicia found on SECUR's website and elsewhere that describe its relationship with PacTec, counsel for SECUR has characterized the nature of the relationship between PacTec and SECUR as a "marketing mechanism" as if that terminology somehow relieves SECUR from complying with the Subpoena. See Exhibit 9. They are both advertising for sale and indeed selling products allegedly covered by the Subject Patents in this Action. They are jointly labelling products like inter-modal containers which are placed into interstate commerce. See Exhibit 4. SECUR may have a license with PacTec which would be relevant. Regardless of how the business relationship is labeled, by counsel or otherwise, ICE is entitled to discover documents and to make the inspection pursuant to the Subpoena. The document requests are reasonably limited to this clearly established ongoing business relationship.

In addition to arguing over the labeling of the business relationship, counsel for SECUR seems to be denying the existence of the cooperation between SECUR and PacTec in bidding on

---

[4] "[S]imply objecting to requests as...'irrelevant,' without showing 'specifically how each [request] is not relevant'… is inadequate to 'voice a successful objection.' *Ceuric v. Tier One, LLC*, 325 F.R.D. 558, 561 (W.D. Pa. 2018)(internal citations omitted).

certain contracts, RFPs, and/or projects. That joint work, whether characterized as making joint bids on projects, joint labelling of products, PacTec being a vendor of SECUR, or otherwise, is relevant to discovery. Their joint discussions regarding competition against ICE and assertions of patent infringement claims against ICE are relevant. Therefore, ICE is requesting all RFP-type documents from SECUR as related to any customer or potential customer.

Joint work between PacTec and SECUR is clearly seen in the handful of documents that PacTec has produced to ICE that include communications with individuals from SECUR.[5] For example, the two companies generated a combined or joint response to RFP's, such as, but not limited to the Vermont Yankee project. See Exhibit 10 (PACTEC-000007686-95).[6] The Vermont Yankee project was one **where SECUR asked PacTec to work with it on the bid to compete against ICE and in the process, told PacTec** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[7] This is SECUR asking PacTec to work with it by asserting patent infringement against ICE in an effort to be more competitive in a bidding process.

Further discovery in this joint bidding or coordination both on bidding and/or on anti-competitive behavior is clearly allowable. Other examples, include, but are not limited to bidding performed in connection with a project in West Valley, NY, as evidenced by emails between

---

[5] On November 5, 2019, ICE has also served requests for productions upon PacTec that are specifically directed to its relationship with SECUR and documents created under that relationship. However, such requests directed to PacTec do not relieve SECUR of its burden to provide similar discovery directed to it under the present Subpoena.

[6] The examples cited in this paragraph are not meant to be limiting, but merely illustrative of the ongoing cooperation and communications between PacTec and SECUR and the types of projects that both SECUR and PacTec work on together.

[7] See also, Exhibit 11 PACTEC-000004350, an email from SECUR to PacTec requesting information in which to prepare a response to an RFP ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

14

PacTec and SECUR employees discussing "pricing from Clinton to SECUR for 450 trans pac zippered bags that are IP-1. Price delivered to West Valley, NY." Exhibit 12 (PACTEC-000007458-60). There are emails between SECUR and PacTec with the subject line "Subject: RE: SPRU Quote." Exhibit 13 (PACTEC-000008613-17). The "SPRU" project refers to the Department of Energy ("DOE") project "Separation Process Research Unit" in Albany, NY, which was the site of the trade secret theft by PacTec employee Andy Avila as pled in ICE's First Amended Answer in the Tennessee Litigation. See Exhibit 14. ICE has raised economic espionage and trade secret misappropriation in its counterclaim against PacTec and it relates to actions taken by PacTec employee Andy Avila on a jobsite where SECUR was involved in the project (SPRU Albany Project reference above). Also related to the SPRU and Luckey, OH projects, there are emails between PacTec and SECUR, wherein Ken Grumski of SECUR states ▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit 15 (PACTEC-000004192). This is highly relevant to the counterclaim for espionage and trade secret misappropriation referenced above. Finally, there is joint cooperation between PacTec and SECUR for work at UCOR. See Exhibit 16 (PACTEC-000008482-8509). There appear to be other instances as well, including but not limited to the project for the DOE in Luckey, OH. See Exhibit 14. As can be seen through these illustrative examples, the companies are working together to assert patents, gather competitive intelligence (rightly or wrongly) and/or to affect the bidding process to allow both SECUR and PacTec to be competitive against ICE.

These very few documents produced by PacTec clearly demonstrate an established business relationship in which SECUR provides or offers to provide some waste hauling services and uses PacTec's allegedly patented soft-sided packaging in which to complete these waste hauling services for its customers and/or potential customers. Additionally, the PacTec emails

evidence that PacTec and SECUR are actively bidding on work that is competitive and/or anti-competitive to ICE and these actions are highly relevant at least to the ICE tortious interference and trade secret counter claims and in any patent infringement damages analysis. Summarily refusing to produce documents based on unsubstantiated claims of duplication or non-relevance is simply not allowed, nor is it persuasively argued by SECUR under the present facts.

IV.  **CONCLUSION**

Mindful of its obligation to attempt to resolve discovery problems before bringing them to the attention of the Court, ICE has had numerous email and letter communications, as well as telephonic discussions attempting to enforce the Subpoena, including the original meet and confer on October 25, 2019 and its latest telephonic communication on November 20, 2019 in which counsel for SECUR confirmed that no inspection of premises was going to be allowed on the noticed date or at any other time.

ICE respectfully requests that this Honorable Court enter an Order compelling SECUR, LLC to allow for inspection as detailed in the Subpoena within 10 days. ICE respectfully requests that this Honorable Court enter an Order compelling SECUR, LLC to produce the 26 categories of documents that it has detailed in the Subpoena within 20 days.

                                          Respectfully submitted:

Dated: March 16, 2020                  HOUSTON HARBAUGH, P.C.

                                          By: */s/ Henry M. Sneath*
                                              Henry M. Sneath, Esq.
                                              PA Bar No. 40559
                                              Amber L. Reiner Skovdal, Esq.
                                              PA Bar No. 315998
                                              Carissa T. Howard, Esq.
                                              PA Bar No. 90900
                                              401 Liberty Avenue, 22nd Floor
                                              Pittsburgh, PA 15222
                                              (412) 288-5060 – Telephone
                                              sneathhm@hh-law.com
                                              reineral@hh-law.com
                                              howardct@hh-law.com

                                              *Counsel for I.C.E. Service Group, Inc. and I.C.E. Packaging Company, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing *I.C.E. SERVICE GROUP, INC. AND I.C.E. PACKAGING COMPANY, LLC'S MOTION AND MEMORANDUM TO COMPEL NON-PARTY SECUR LLC'S COMPLIANCE WITH SUBPOENA* was served on all counsel of record this 16th day of March, 2020, via email, as follows:

John G. Jackson, Esquire
Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN  37450
JJackson@chamblisslaw.com

Michael Leachman, Esquire
Robert Waddell, Esquire
Jones Walker
600 Jefferson Street, Suite 1600
Lafayette, LA  70501
mleachman@joneswalker.com
rwaddell@joneswalker.com
*(Attorneys for PacTec)*

Donald J. Aho, Esquire
Miller & Martin
Volunteer Building, Suite 1200
832 Georgia Avenue
Chattanooga, TN  37402
Don.Aho@millermartin.com
*(Attorney for Strategic Packaging Systems, LLC)*

Stanley Ference, Esquire
FERENCE & ASSOCIATES, LLC.
409 Broad Street
Pittsburgh, PA 15143
sference@ferencelaw.com
*(Attorney for SECUR)*

HOUSTON HARBAUGH, P.C.
*/s/ Henry M. Sneath*
Henry M. Sneath, Esq.
Amber L. Reiner Skovdal, Esq.
Carissa T. Howard, Esq.