IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TANAYA COATES | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| UPMC MERCY | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Tanaya Coates ("Coates") files this Complaint against her former employer, UPMC Mercy ("UPMC"), seeking damages for the discrimination she was subjected to at work and the unlawful termination of her employment.

## THE PARTIES

1. Tanaya Coates is an adult female who resides at 1303 Bellaire Place, Pittsburgh, PA 15226.

2. UPMC Mercy is a non-profit corporation organized under Pennsylvania law and a primary place of business located at 1400 Locust St., Pittsburgh, PA 15219.

3. At all relevant times, UPMC Mercy continuously employed more than 15 employees and was a covered employer as defined by the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et seq.*), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978 ("PDA" – 42 U.S.C. § 2000e(k)).

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Coates' claims arise under the laws of the United States and Coates seeks redress for violations of federal laws.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b)(2) as a substantial part of the events or omissions giving rise to Coates' claims occurred at UPMC Mercy.

**FACTUAL BACKGROUND**

6. Coates worked at UPMC Mercy as a Transporter since September 21, 2015.

7. The job duties of a Transporter include: safely and efficiently transporting patients and equipment to and from nursing units and other departments throughout the hospital in accordance with established policies and procedures; transporting patients and adjunct equipment via prescribed vehicles between patient units, treatment centers, and their designated areas in a safe, timely, and accurate manner; and delivering supplies, equipment and other materials to the patient units and other designated areas in a safe, timely and accurate manner.

8. Coates became pregnant in September of 2018 and required medical treatment as part of her pregnancy throughout the month.

9. Coates' pregnancy and related medical treatment directly impacted her job performance.

10. Despite receiving medical treatment for her pregnancy, Coates suffered a miscarriage.

11. In November 2018, Coates became pregnant.

12. Coates notified Michael Narr ("Narr"), her immediate supervisor, that her pregnancy had been classified as a high-risk pregnancy and that she needed to avoid certain working conditions that could result in another miscarriage.

13. Other UPMC personal, including Connie Henry and personal from UPMC WorkPartners were notified of Coates' high-risk pregnancy.

14. Without discussing or providing any accommodations for her high-risk pregnancy, Coates was placed on a Performance Improvement Plan ("PIP").

15. As part of the PIP, Coates was required to meet once per week with Narr to discuss and track her progress. Coates' performance initially improved.

16. As of December 28, 2018, Coates was restricted to light duties when working by her OBGYN because of her pregnancy and medical condition.

17. Rather than accommodate Coates' restrictions, Narr informed Coates that no light duty was available for pregnant women and instructed Coates to file for disability leave.

18. Soon after, WorkPartners permitted Coates to return to work with the following restrictions: prohibition on lifting or carrying greater than fifty (50) pounds; occasional ability to push or pull fifty-one (51) to one hundred (100) pounds; unlimited carrying, pushing and pulling up to fifty (50) pounds; and an indication for breaks when standing.

19. Despite receiving the information above, UPMC failed to provide Coates with the proper accommodations.

20. As a result, Coates performance regressed. When she discussed this issue with Narr, Coates was told that if she voluntarily resigned, she would be eligible

for rehire by UPMC after giving birth.  If Coates refused to voluntarily resign, Narr stated that he would ensure that Coates would never work for UPMC again.

21.    By letter dated January 30, 2019, Coates was notified that her employment was terminated, effective February 1, 2019.

22.    Coates was able to perform the essential duties of the Transporter position at all relevant times.

## Coates' Exhaustion of Her Administrative Remedies

23.    On July 30, 2019, Coates filed a Charge of Discrimination against UPMC with the Equal Employment Opportunity Commission ("EEOC") alleging gender, pregnancy and disability discrimination.

24.    By letter dated December 18, 2019, the EEOC notified Coates of her right to file a civil action against UPMC.

25.    Coates has initiated this action within 90 days of receiving the EEOC's Right to Sue letter.

26.    Accordingly, Coates has exhausted her administrative remedies under federal law.

## STATEMENT OF CLAIMS

### Count One
### Violations of Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act of 1978

27.    Coates incorporates by reference the allegations in Paragraphs 1 through 26 as if fully set forth herein.

28.    UPMC engaged in unlawful practices in violation of Title VII, by first disciplining and then terminating Coates because of her pregnancy.

4

29. The unlawful practices complained of in paragraphs 1 through 26 were intentional and caused Coates to suffer emotional distress including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and/or physical damages.

30. The unlawful employment practices, complained of in paragraphs 1 through 26 above, were intentional and were done with malice or with reckless indifference to the federally protected rights of Coates.

## Count Two
### Violations of the Americans with Disabilities Act

31. Coates incorporates by reference the allegations in Paragraphs 1 through 30, as if sully set forth herein.

32. The acts and omissions by UPMC that are described in this Complaint constitute unlawful discrimination and failure to accommodate under the ADA.

33. As a proximate result of UPMC's conduct, Coates has or will suffer substantial harm, for which Coates seeks general, compensatory, consequential, and punitive damages.

## Requests for Relief

Accordingly, Coates requests that this Court enter judgment on her behalf and enter an order directing the award of other relief as follows:

A. Finding that UPMC violated Title VII;

B. Finding that UPMC violated the ADA;

C. Awarding Coates back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make her whole;

D. Awarding Coates compensatory damages for pain, humiliation, emotional distress, and damage to reputation;

E. Awarding Coates punitive damages;

    F.       Awarding Coates attorney's fees and costs;

    G.       Awarding Coates pre- and post-judgment interest as provided by law; and

    H.       Awarding Coates any other relief to which she is entitled and/or which this Court deems necessary and proper.

A jury trial is demanded for all claims triable by jury.

                                          Respectfully submitted,

                                          /s/Ryan M. Carroll
                                          Ryan M. Carroll
                                          PA I.D. No 205851
                                          rcarroll@edgarsnyder.com
                                          Edgar Snyder & Associates
                                          US Steel Tower, 10th Floor
                                          600 Grant Street
                                          Pittsburgh, PA 15219
                                          TELEPHONE: (412)394-4496
                                          FACSIMILE: (412)391-8177

                                          **COUNSEL FOR PLAINTIFF**