IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROXANNE VAVASES and JOHN VAVASES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. |
| | ) | |
| CALIFORNIA AREA SCHOOL DISTRICT and MICHAEL S. SEARS, SUPERINTENDENT, | ) | **ELECTRONICALLY FILED** |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Roxanne Vavases, by her undersigned attorneys, Thomson, Rhodes & Cowie, P.C., submits the following Complaint against the defendants.

**I.    Jurisdiction and Venue.**

1.     This Court has jurisdiction pursuant to 28 U.S.C. §1331, because the action arises out of the Americans with Disabilities Act of 1990 (ADA), and the Americans with Disabilities Amendment Act of 2008 (ADAAA), 42 U.S.C. §§12101, *et seq.*

2.     This Court has supplemental jurisdiction over plaintiff's state law claim under 28 U.S.C. §1367.

3.     Plaintiff has exhausted administrative remedies.  Plaintiff filed a charge and an amended charge with the United States Equal Employment Opportunity Commission (EEOC), which charge was also filed with the Pennsylvania Human Relations Commission (PHRC).

4.     On or about October 10, 2019, the EEOC issued a finding that there was reasonable cause to believe that the Respondent subjected the Charging Party to discrimination based on her disability by subjecting her to harassment and less favorable terms and conditions of employment.  The EEOC issued a Right to Sue Letter on January 10, 2020.  Suit is timely filed within 90 days of receipt of said notice.  A copy of said Right to Sue Letter is attached here to as Exhibit "A."

5.     Venue is proper under 28 U.S.C. §1391(b)(1) and (b)(2) because the defendants reside or have their place of business in this District, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**II.     Parties.**

6.     Plaintiff, Roxanne Vavases, is an adult individual who resides at 200 Modisette Avenue, Donora, PA  15033, with her husband, plaintiff, John Vavases, and their three children.

7.     Defendant, California Area School District, is a public K-12 school with offices and principal place of business located at 40 Trojan Way, Coal Center,

PA 15423. The District is a public body that receives funding from the United States of America and the Commonwealth of Pennsylvania.

8.     Defendant, Michael S. Sears, was, at all times relevant, the Superintendent of the California Area School District acting within the course and scope of his employment and in furtherance of its interests, with an office address of 40 Trojan Way, Coal Center, PA 15423.

9.     California Area School District is an employer within the meaning of the ADA and PHRA, having between 101 and 200 employees.

**III.   Facts Common to all Counts.**

10.     Ms. Vavases was hired as a sixth-grade science teacher by California Area School District in or about August 2003, and since that time has taught sixth-grade science and other subjects including K-8 gifted education, in effect carrying a double teaching load in some years.

11.     At all times relevant, Ms. Vavases was a fully licensed and certified teacher fully qualified to teach those subjects she taught.

12.     Ms. Vavases preformed her duties in a competent, professional manner, and was recognized for her teaching abilities. Among other things, Ms. Vavases was chosen to be the sixth-grade team leader, responsible for coordinating the activities of other teachers at the sixth-grade level.

13.     In 2015, Ms. Vavases was diagnosed with a rare autoimmune disorder known as "Stiff Person Syndrome."  Stiff Person Syndrome patients can experience sudden and painful muscle contractions, which may become so severe as to cause bones to break.  These muscle contractions may be triggered by sudden intense emotional stress, unexpected strong physical contact, and other situations which would cause muscles suddenly to become very tense.  The condition can be life-threatening if not immediately treated.

14.     Stiff Person Syndrome cannot be cured, but its effects can be mitigated through aggressive immune globulin therapy, which required an inpatient hospital stay of approximately three days at thirty to sixty-day intervals.

15.     Prior to the 2016-17 school year, Ms. Vavases requested and the previous Administration granted reasonable accommodations including the use of sick time for medical treatment, use of a walker and assistance with lifting as needed, the ability to wear more comfortable loose-fitting clothing when needed, use of an elevator key when needed for travel within the building, and more frequent bathroom breaks.  With these accommodations, Ms. Vavases was able to perform the essential functions of her job as a sixth-grade teacher.

16.     Following Mr. Sears' promotion to the position of Superintendent in the 2017-18 school year, there was a marked change in attitude toward Ms. Vavases' disability.  Ms. Vavases became the subject of increased scrutiny,

secretive communications, harassment, and disparate treatment orchestrated by Mr. Sears.

17.     For example, on October 6, 2017, Ms. Vavases was hospitalized for her regularly scheduled infusion therapy.  Her hospital stay ended up being extended because she developed aseptic viral meningitis, a rare but serious complication of infusion treatment.

18.     Ms. Vavases was discharged from the hospital on Wednesday, October 18, 2017, and expected to return to her full duties the following Monday. However, late in the afternoon on Friday, she received a telephone call from middle school principal Raymond Huffman, her immediate supervisor, who stated that she was not permitted to return to work unless and until she produced an "unconditional medical release," after a complete medical assessment by her physician.  Mr. Huffman informed her that this order came directly from Superintendent Michael Sears.  Ms. Vavases contacted the Business Manager, Vincent M. Belczyk, who also confirmed that she would not be permitted to come to work until she produced an "unconditional medical release," per Mr. Sears' directive.  To the best of Ms. Vavases' knowledge, no other teacher in the District has been required to produce an "unconditional medical release" following a hospital stay.

19.    On Tuesday, October 24, 2017, Ms. Vavases sent an email to Mr. Huffman, stating in substance that the demand for an "unconditional medical release" constituted a violation of the ADA and PHRA.  Ms. Vavases spoke to Mr. Huffman later that day, who told her that Mr. Sears was furious when he saw her e-mail.  Later that day, however, Ms. Vavases received an email response from Mr. Belczyk stating that the District simply wanted something from her doctor stating that she was able to return to work.

20.    On Thursday, October 26, 2017, Ms. Vavases' doctor faxed a note stating that Ms. Vavases was able to return to work without restrictions.  Ms. Vavases returned to work on Friday, October 29, 2017.  The following Monday, October 29, 2017, Mr. Huffman came to her classroom and said, "you are permitted to be here."  When questioned, Mr. Huffman told her that Mr. Sears was not happy that she had been at work prior to receiving his consent.  Mr. Huffman later told her that Mr. Sears did not like the fact that she was sick and missed work and stated to her that Mr. Sears "wants my job."

21.    As a result of the stress brought on by this incident, Ms. Vavases went into muscular spasm and had to be taken out of the building by ambulance and then life-flighted to Allegheny General Hospital.

22.    As a result of Mr. Sears' insistence on an "unconditional medical release," Ms. Vavases had to use sick days for days when she could have been at

work.  When she told Mr. Huffman that she should have those sick days restored, Mr. Huffman stated, "That's not going to happen.  Mr. Sears already said so."

23.    In November 2017, Ms. Vavases learned that Mr. Sears had directed Mr. Huffman to provide him with regular updates on her health and directed Mr. Huffman not to put anything in writing regarding Ms. Vavases. Ms. Vavases also learned that Mr. Sears had instructed Mr. Huffman to closely monitor her classroom performance and questioned her activities with the gifted program.

24.    When Ms. Vavases suffered another medical setback and needed to be off work for chemotherapy, Mr. Sears denied her application for FMLA leave by letter dated April 18, 2018, on the grounds that she had not worked enough hours to qualify for FMLA leave.

25.    To the best of Ms. Vavases' knowledge, no teacher has ever been denied FMLA leave on any basis, and in fact she had been granted FMLA leave in 2015, based on essentially the same work hours, at a time when Mr. Sears was not superintendent.

26.    After the Union filed a grievance on her behalf, based on federal regulations which state that the employer has the burden of proving that a teacher did not work the requisite number of hours, Ms. Vavases was informed by letter dated May 4, 2018, that she could reapply for FMLA leave.  Ms. Vavases' was

informed by letter dated July 3, 2018, (in the middle of summer vacation) that her application for FMLA leave had been approved.

27.     Mr. Sears also attempted to interfere with the right of Union members to donate their own sick days to Ms. Vavases, by instructing the business office not to accept donations of multiple days.

28.     On May 3, 2018, Ms. Vavases was admitted to the hospital for a new and unrelated medical emergency.  Ms. Vavases was discharged on May 4 and returned to work on May 11, 2018.  While Ms. Vavases was out, Mr. Sears directed the business office to send her a release so that the District and Mr. Sears could gain full access to her medical records.

29.     On May 15, 2018, Mr. Sears demanded that Ms. Vavases meet with him to address what he characterized as "confusing and conflicting" return to work authorizations.  Ms. Vavases was so upset by Mr. Sears' demand that Mr. Huffman told her to go back home, and later that evening called to tell her to take another day "on Mike's dime."  On May 18, 2018, Ms. Vavases was hospitalized for surgery and was not permitted to return to work for the remainder of the school year.

30.     Despite being out recovering from surgery, Mr. Sears insisted on a meeting with him on May 29, 2018.  At that meeting, Mr. Sears interrogated Ms. Vavases for over an hour in a very unprofessional, intimidating and embarrassing

manner.  Mr. Sears spoke loudly, threw his arms into the air, crossed his arms tightly and made facial gestures that were very intimidating.  He kept repeating that he "needed more information," "wants more explanations," "needed to get to the bottom of things," and so on.

31.     When Ms. Vavases returned to work for the fall 2018 semester, Mr. Sears' harassment and intimidation began anew.  When, on September 14, 2018, a couple of boys engaged in horseplay in the boys' bathroom, resulting in a minor injury to one of them, Mr. Sears demanded an "investigation" of the incident.  Ms. Vavases gave Mr. Huffman a copy of her restroom policy so that he could satisfy Mr. Sears' demand for an "investigation."

32.     One of Ms. Vavases' duties was to monitor students in the cafeteria prior to the start of classes.  The students were in the cafeteria for no more than ten minutes before proceeding to their classrooms.  On at least three occasions, Mr. Sears came into the cafeteria and sat with a notebook and pen with his gaze fixed upon Ms. Vavases.  To the best of Ms. Vavases' knowledge, Mr. Sears never monitored any other teacher in the cafeteria.  Sears' behavior only stopped when Ms. Vavases complained to her Union.

33.     In October 2018, Mr. Sears ordered Mr. Huffman provide him with a copy of the lesson plan for a social studies course Ms. Vavases co-taught with another sixth-grade teacher and to identify specifically which parts of the lesson

plans were Ms. Vavases' responsibility.  To the best of Ms. Vavases knowledge,

Mr. Sears has never asked for a lesson plan from any other teacher.  After

receiving the lesson plan, Mr. Sears complained that it was not detailed enough,

and demanded detailed lesson plans, showing exactly which parts of the lesson Ms.

Vavases was teaching.  The Union again had to intercede on her behalf.

34.    In December 2018, Ms. Vavases was instructed to meet with Mr.

Sears for possible disciplinary action as a result of an unwarranted parental

complaint.  Mr. Sears began the meeting by reading the District's Mission

Statement and accusing Ms. Vavases of not meeting the child's needs.  Ms.

Vavases rebutted this false accusation by producing evidence that she had done

everything called for in the child's Individualized Education Plan; whereupon

Union representative Joseph Feick asked Mr. Sears what more it would take for

him to be satisfied.  At that point, Mr. Sears abruptly ended the meeting and

thanked Ms. Vavases for her time.  Despite this, Mr. Sears pulled the child from

Ms. Vavases' classroom and hired a substitute teacher whose primary job was to

teach that student from the lesson plans Ms. Vavases had prepared.

35.    As a result of Mr. Sears' unfounded allegations, intense scrutiny and

harassing behavior, in January 2019, Ms. Vavases was forced to take a medical

sabbatical for the remainder of the school year for restoration of her health.  At the

time, Ms. Vavases had every intention of returning to the sixth-grade teaching

position for the 2019-2020 school year.  Mr. Sears, however, had other plans.

36.    As the EEOC's investigation of Ms. Vavases' amended charge was

proceeding, on August 1, 2019, Ms. Vavases received a "Tentative Teacher

Schedule" dated July 22, 2019, informing her that the sixth-grade teaching position

she had performed since August 2003 would be taken away and she would be

transferred to a 7 - 8th grade Science and STEM position.

37.    Ms. Vavases was never consulted or given a reason for this

involuntary transfer, which occurred in violation of the Collective Bargaining

Agreement.  The reassignment occurred more than a month after the June 20

deadline for involuntary transfers, and there were qualified teachers with less

seniority who were not involuntarily transferred.

38.    The reassignment resulted in a significant change in the terms and

conditions of Ms. Vavases' employment.  She had been a sixth-grade science

teacher for 16 years, and therefore could perform those duties with minimal

preparation.  The move to 7 - 8 grade teaching responsibilities would have required

immense preparation outside of class.  Ms. Vavases would need to develop the 7th

grade STEM curriculum essentially "from scratch," as it did not exist.

39.    Due to the physical and mental demands of the new position, Ms.

Vavases was compelled to take a medical sabbatical for the first semester of the

2019-2020 school year and, in January 2020, to go on unpaid medical leave, effectively ending her teaching career.

## COUNT I
## VIOLATION OF
## AMERICANS WITH DISABILITIES ACT ADAAA

## DISABILITY DISCRIMINATION

40.    The preceding paragraphs are incorporated herein.

41.    Ms. Vavases was and is an employee of the defendant School District within the meaning of the ADA/ADAAA.

42.    The defendant School District was and is an employer within the meaning of the ADA/ADAAA.

43.    Ms. Vavases was, at all times material, a qualified individual with a disability as defined in 42 U.S.C. §12102(2), 29 C.F.R. §1630.2(g), in that she has a physical or mental impairment that limits one or more of his major life activities, has a record of such impairments, and/or was perceived and regarded by Defendant as having such an impairment.

44.    Ms. Vavases was qualified to perform the essential functions of a sixth-grade teacher with the accommodations previously set forth.

45.    Ms. Vavases was subjected to the adverse employment actions set forth herein as a result of her disability.

46.     Defendant's intentional discrimination caused Ms. Vavases to suffer damages including but not limited to lost income, lost benefits, emotional distress, physical harm, mental anguish, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, costs of this action, reimbursement of back pay with interest, front pay, non-economic damages, attorneys' fees, and such other relief as the Court may deem just and proper under the circumstances.

## COUNT II
## THE PENNSYLVANIA HUMAN RELATIONS ACT (PHRA)

## DISABILITY DISCRIMINATION

47.     The preceding paragraphs are incorporated herein.

48.     Ms. Vavases was and is an employee of the defendant School District within the meaning of the PHRA.

49.     The defendant School District was and is an employer within the meaning of the PHRA.

50.     Ms. Vavases was, at all times material, a qualified individual with a disability as defined in the PHRA, in that she has a physical or mental impairment that limits one or more of his major life activities, has a record of such impairments, and/or was perceived and regarded by Defendant as having such an impairment.

51.    Ms. Vavases was qualified to perform the essential functions of a sixth-grade teacher with the accommodations previously set forth.

52.    Ms. Vavases was subjected to the adverse employment actions set forth herein as a result of her disability.

53.    Defendant's intentional discrimination caused Ms. Vavases to suffer damages including but not limited to lost income, lost benefits, emotional distress, physical harm, mental anguish, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just and proper under the circumstances.

**COUNT III**
**VIOLATION OF REHABILITATION ACT SECTION 504**

**DISABILITY DISCRIMINATION**

54.    The preceding paragraphs are incorporated herein.

55.    At all times material hereto, Plaintiff is, and was a qualified individual with a disability or handicap, within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. §794, in that she has a physical impairment that limits one or more of her major life activities and/or is perceived and regarded by Defendant as having such an impairment.

56.     At all times material hereto, the District was a recipient of Federal

financial assistance within the meaning of Section 504, including assistance under

the Education of the Handicapped Act.

57.     Ms. Vavases was subjected to the adverse employment actions set

forth herein as a result of her disability.

58.     Defendant's intentional discrimination caused Ms. Vavases to suffer

damages including but not limited to lost income, lost benefits, emotional distress,

physical harm, mental anguish, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands judgment against Defendant for

compensatory and punitive damages, costs of this action, reimbursement of back

pay with interest, front pay, non-economic damages, attorneys' fees, and such

other relief as the Court may deem just and proper under the circumstances.

## COUNT IV
## VIOLATION OF THE ADA/ADAAA

## RETALIATION

59.     The preceding paragraphs are incorporated herein.

60.     On Tuesday, October 24, 2017, Ms. Vavases sent an email to Mr.

Huffman, stating in substance that the demand for an "unconditional medical

release" constituted a violation of the ADA and PHRA.  Ms. Vavases subsequently

complained of discriminatory conduct, as set forth in her EEOC charge filed

July 20, 2018, and her amended charge filed October 10, 2018.

61.     Ms. Vavases was subjected to the adverse employment actions set forth herein as a result of her complaints of discrimination.

62.     Defendant's intentional retaliation caused Ms. Vavases to suffer damages including but not limited to lost income, lost benefits, emotional distress, physical harm, mental anguish, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, costs of this action, reimbursement of back pay with interest, front pay, non-economic damages, attorneys' fees, and such other relief as the Court may deem just and proper under the circumstances.

## COUNT V
## VIOLATION OF THE PHRA

### RETALIATION

63.     The preceding paragraphs are incorporated herein.

64.     The PHRA prohibits retaliation based upon the complaints of discrimination by an employee.

65.     Defendant retaliated against Plaintiff because she complained of discrimination in violation of the PHRA.

66.     Defendant's intentional retaliation caused Ms. Vavases to suffer damages including but not limited to lost income, lost benefits, emotional distress, physical harm, mental anguish, embarrassment, and humiliation.

67.     Defendant's deliberate retaliation against Plaintiff is unlawful and in violation of the PHRA.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just and proper under the circumstances.

## COUNT VI
## VIOLATION OF REHABILITATION ACT SECTION 504

## RETALIATION

68.     The preceding paragraphs are incorporated herein.

69.     Regulations under Section 504 prohibit retaliation against individuals based on complaints of discrimination.  34 C.F.R. §100.7(e).

70.     Ms. Vavases was subjected to the adverse employment actions set forth herein as a result of her complaints of discrimination.

71.     Defendant's intentional retaliation caused Ms. Vavases to suffer damages including but not limited to lost income, lost benefits, emotional distress, physical harm, mental anguish, embarrassment, and humiliation.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, costs of this action, reimbursement of back pay with interest, front pay, non-economic damages, attorneys' fees, and such other relief as the Court may deem just and proper under the circumstances.

## COUNT VII
## VIOLATION OF THE PHRA

## AIDING AND ABETTING DISCRIMINATION AND RETALIATION

72.     The preceding paragraphs are incorporated herein.

73.     The PHRA makes it unlawful "for any person, employer, employment agency or labor organization or employee, to aid, abet, incite, compel or coerce" certain discriminatory practices.  43 P.S. §955(d).  Under the PHRA, an individual supervisory employee is liable under an aiding and abetting/accomplice liability theory for his own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under his supervision.

74.     By his conduct as set forth herein defendant Sears engaged in direct acts of discrimination and retaliation against Ms. Vavases in violation of the PHRA.

WHEREFORE, Plaintiff demands judgment against Defendant Michael S. Sears for compensatory damages, costs of this action, reimbursement of back pay with interest, front pay, attorneys' fees, and such other relief as the Court may deem just and proper under the circumstances.

## COUNT VIII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

75.     The preceding paragraphs are incorporated herein.

76.     The conduct of defendant Michael S. Sears, acting within the course and scope of his employment and in furtherance of his employer's interests as set forth herein, was intentional, outrageous, and was intended to and did cause Ms. Vavases to suffer severe emotional distress due to Mr. Sears' personal animosity toward her.

77.     Ms. Vavases suffered physical harm as a result of Mr. Sears' conduct, including, without limitation, exacerbation of symptoms associated with Stiff Person Syndrome to the point where Ms. Vavases was compelled to take medical sabbatical and, ultimately, unpaid medical leave.

78.     Mr. Sears' outrageous conduct has caused Ms. Vavases to suffer economic damages including, without limitation, lost wages and benefits, and increased medical expenses and non-economic damages including, without limitation, physical pain and suffering, exacerbation of her medical condition, embarrassment, humiliation, and mental anguish.

WHEREFORE, plaintiff seeks damages against the defendant Michael S. Sears, for lost wages and benefits, and increased medical expenses and non-economic damages including, without limitation, physical pain and suffering, exacerbation of her medical condition, embarrassment, humiliation, and mental anguish together with costs, punitive damages, and such other relief as the Court finds to be just and proper.

## COUNT IX

## LOSS OF CONSORTIUM

79.    The preceding paragraphs are incorporated herein.

80.    As a direct result of the actions of the defendant Michael S. Sears, as set forth in the previous Count, plaintiff John Vavases has been deprived of the comfort, society, and services of his wife, Roxanne Vavases.

WHEREFORE, plaintiff John Vavases claims compensatory damages in an amount to be determined by the court, together with costs and such other relief as the Court finds to be just and proper.

JURY TRIAL DEMANDED

Respectfully submitted,

s/ William James Rogers
William James Rogers, Esquire
PA38990
Jerry R. Hogenmiller
PA34260

THOMSON, RHODES & COWIE, P.C.
Two Chatham Center, Tenth Floor
Pittsburgh, PA  15219-3499
Phone:  412-232-3400
Attorneys for plaintiffs

W:\WJR\19192 Vavases, Roxanne EEOC matter\federal court pleadings\federal court complaint.docx

CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the United Judicial System of Pennsylvania:  Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Respectfully submitted,

s/ William James Rogers
William James Rogers, Esquire
PA38990
Jerry R. Hogenmiller
PA34260

THOMSON, RHODES & COWIE, P.C.
Attorneys for plaintiffs