# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN EAGLE OUTFITTERS, INC., a Delaware corporation, and RETAIL ROYALTY COMPANY, a Nevada corporation, <br><br> Plaintiffs, <br><br> v. <br><br> WALMART, INC., a Delaware corporation, <br><br> Defendant. | Civil No. _____ <br><br> COMPLAINT FOR: <br><br> (1) FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION [15 U.S.C. § 1125(a)]; <br><br> (2) UNLAWFUL ACTS OR PRACTICES [Pa. Unfair Trade Practices and Consumer Protection Law § 201-1, et seq.]; and <br><br> (3) COMMON LAW TRADEMARK INFRINGEMENT <br><br><br> ELECTRONICALLY FILED <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs American Eagle Outfitters, Inc. and Retail Royalty Company (collectively, "AEO") file this Complaint against Defendant Walmart, Inc. ("Walmart") and allege as follows, upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters:

## NATURE OF THE CASE

1.     This is an action for false designation of origin under 15 U.S.C. § 1125(a), unlawful acts or practices under Pennsylvania Unfair Trade Practices and Consumer Protection Law § 201-3, and common law trademark infringement and unfair competition.

2.     Ever since Levi Strauss began making denim pants in the 1870s, stitching has adorned the back pockets of jeans, serving as a visible and vital element of their branding.

Consumers and the public, in turn, have come to recognize jeans not just by the name on the label, but by the design on the back pockets as well. So is the case with the denim jeans put out by leading clothing retailer AEO, one of the most popular brands of women's jeans in the U.S. Since 2003, AEO has sold hundreds of millions of pairs of women's jeans and bottoms featuring AEO's unique, distinctive, and proprietary pocket stitching design ("the AEO Design Mark") shown below:

 

  

3.     The AEO Design Mark has long served as one of AEO's most iconic brand symbols. In addition to massive sales of more than $7 billion of women's jeans and bottoms

bearing the AEO Design Mark since 2010 alone, AEO has spent many millions on advertising highlighting the AEO Design Mark and has also featured the AEO Design Mark on its high-traffic website and social media sites, where millions of consumers have seen or purchased AEO's jeans. As a result, the AEO Design Mark has long been a strong, well-known trademark, instantly identifiable in stores and on the street as indicating genuine AEO jeans.

4.       The AEO Design Mark and AEO's reputation now stand threatened by a line of lower-priced jeans offered by Walmart, the big-box behemoth whose more than 5,000 U.S. stores and online retail store eclipse even AEO's 950 plus brick and mortar stores and online retail store. Rather than create its own design, Walmart knocked off AEO's:

**AEO Design Mark**   **Walmart's Infringing Pocket Stitch Design**

   

 

(Walmart's jeans bearing the infringing pocket stitch design shown above are referred to as the "Infringing Products.")

5.     The striking similarity between the AEO Design Mark and Walmart's design has serious consequences. It falsely suggests that Walmart's jeans come from AEO or are sponsored or approved by AEO. Confusion is not merely likely; it is happening in real time. Actual confusion has surfaced on social media, with influencers posting Walmart's infringing pocket design and their followers noting its similarity to the AEO Design Mark or confusing the two brands outright. These public expressions of actual confusion are likely just the tip of the iceberg. Yet despite being placed on express notice of AEO's trademark rights and objections, Walmart continues to market, promote, advertise, and sell the Infringing Products.

6.     Walmart's unlawful activities, described more fully below, constitute trademark infringement, false designation or origin, and unfair competition, and have caused and, unless enjoined, will continue to cause irreparable harm to AEO, the AEO Design Mark, and the consuming public. AEO accordingly seeks injunctive relief, Walmart's profits from the sale of the Infringing Products, AEO's actual damages, attorney fees, and costs.

## THE PARTIES

7.      Plaintiff American Eagle Outfitters, Inc. is a corporation of the State of Delaware with a principal place of business at 77 Hot Metal Street, Pittsburgh, Pennsylvania 15203.

8.      Plaintiff Retail Royalty Company is a corporation of the State of Nevada with a principal place of business at 101 Convention Center Drive, Las Vegas, Nevada 89109. Retail Royalty Company, a wholly owned subsidiary of Plaintiff American Eagle Outfitters, Inc., is the owner of AEO's trademarks, including the AEO Design Mark, and licenses them exclusively to American Eagle Outfitters, Inc.

9.      Defendant Walmart, Inc. is a Delaware corporation with a principal place of business of 702 SW 8th Street, Bentonville, Arkansas 72716.

## JURISDICTION AND VENUE

10.      This action arises under the federal Trademark Act, 15 U.S.C. § 1051, *et seq*., and the related law of the State of Pennsylvania. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b). Further, this Court has supplemental jurisdiction over AEO's state-law claims pursuant to 28 U.S.C. §1367(a) because those claims are substantially related to AEO's federal claims and arise out of the same operative facts.

11.      This Court has personal jurisdiction over Walmart and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Walmart transacts business and sells the Infringing Products in this District. Venue is also proper because Walmart is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

## AEO, ITS BUSINESS, AND ITS PRODUCTS

12.     Founded in 1977, AEO, together with its affiliated companies, designs, markets, and sells apparel and accessories under the marks AMERICAN EAGLE OUTFITTERS and AMERICAN EAGLE, among others. AEO is one of the top-ranking apparel brands in the country, with more than 950 AMERICAN EAGLE OUTFITTERS and 120 AERIE retail stores across the U.S., and more than 45,000 employees in the U.S. AEO is consistently ranked as a favorite apparel and denim brand. According to leading industry surveys put out by Piper Sandler (formerly Piper Jaffray) and NPD Group, AEO ranks as the #1 favorite jeans brand among consumers 15-25 years old, and the #2 overall favorite apparel brand behind Nike. These rankings have been recognized in publications such as *Los Angeles Times, CNBC, USA Today,* and *Business Insider*, to name a few.

13.     AEO's products are sold in all 50 states and the District of Columbia through its retail stores and its website, www.ae.com. American Eagle Outfitters, Inc., is headquartered in Pittsburgh, Pennsylvania, and AEO has more than 50 retail stores in Pennsylvania, including at least 10 retail stores in Pittsburgh and the surrounding areas.

14.     AEO is presently the largest women's jeans brand in the U.S. and has consistently ranked among the market leaders in that space for years. In 2019 alone, for example, AEO sold $675 million in women's jeans and had the largest U.S. market share of women's jeans among retailers and among brands. AEO sells more pairs of women's jeans than any other retailer, and the AEO brand outsells all other brands of women's jeans in the U.S.

**AEO'S USE OF THE AEO DESIGN MARK ON ITS
WOMEN'S JEANS AND BOTTOMS**

15.     Since at least 2003, AEO has used the AEO Design Mark in commerce in connection with its women's jeans. The AEO Design Mark is highly distinctive and uniquely associated with AEO.





16.     The stitching design of the AEO Design Mark serves no function other than as AEO's brand; it is an arbitrary, inherently distinctive symbol that AEO intended from the outset to be used as a trademark designating a single source, namely, AEO.

17.     As shown in the examples below, AEO has for years used the AEO Design Mark in a variety of colors and washes, including presently on more than 200 different styles, fits, and assortments of women's jeans.



18.     In addition to women's jeans, AEO uses the AEO Design Mark on denim skirts and denim shorts, as shown below.



**AEO'S SALES UNDER ITS AEO DESIGN MARK**

19.     AEO's women's jeans have been the best-selling women's jeans in the country for at least the past 3 years. Since 2010 alone, AEO has sold on average in the U.S. more than 23 million units per year of women's jeans and bottoms bearing the AEO Design Mark. On an average annual basis, such sales have generated more than $700 million in revenues per year for the past 10 years, including total revenues of more than $4.8 billion since 2014 alone. Below is a snapshot of AEO's sales figures of women's jeans and bottoms bearing the AEO Design Mark for the past five years:

| YEAR | UNITS | SALES |
|---|---|---|
| 2014 | 18,158,803 | $620,710,410 |
| 2015 | 20,447,023 | $697,893,112 |
| 2016 | 21,976,582 | $750,066,419 |
| 2017 | 24,443,431 | $836,627,452 |
| 2018 | 25,866,889 | $903,826,093 |
| 2019 | 29,021,150 | $1,001,693,129 |
| **Total** | 139,913,878 | $4,810,816,615 |

**AEO'S ADVERTISING AND PROMOTION OF THE AEO DESIGN MARK**

20.     AEO has devoted significant resources over more than 15 years to advertising and promoting its women's jeans bearing the AEO Design Mark. Over this period, AEO has spent many millions of dollars advertising and promoting its women's jeans, including jeans bearing the AEO Design Mark, and has consistently emphasized the AEO Design Mark in print publications, the Internet, direct mailers, billboards, signage, in-store displays, and social media, among other advertising mediums. AEO's advertisements and marketing efforts have reached billions of individual consumers during that time.

21.     For well over a decade, the AEO Design Mark has been consistently used on AEO's website www.ae.com in connection with AEO's women's jeans. For example, over this

time period, AEO has used the AEO Design Mark in separate product images for all of AEO's women's jeans and in detailed, close-up images for the various styles of women's jeans that AEO sells.

22.     AEO has expressly referred to the AEO Design Mark as its "Signature back pocket stitch" and has informed consumers that its women's jeans feature AEO's "Trademark stitching on the back pocket." Shown below are archived and current examples of the uses described above on AEO's website over the years.













23.     The www.ae.com website has received more than 1.2 billion visits over the last five years alone, with approximately 170 million visits specifically to the "women's jeans" page of the AEO website.

24.     In addition to its website, AEO extensively promotes the AEO Design Mark to consumers on AEO's social media pages (e.g., Facebook, Twitter, Instagram, Pinterest), including to its more than 15.6 million combined followers across its social media outlets. AEO routinely features the AEO Design Mark in its posts on AEO social media, often emphasized and called out in prominent, close-up detail as shown in the examples below. Many of AEO's posts also include authorized re-posts of unsolicited consumer-generated photographs that feature the AEO Design Mark.
















25.     As shown above, AEO intentionally shows just the back pocket of its women's jeans in its social media and other advertising to draw consumer attention to the AEO Design Mark and to further strengthen that mark as a source identifier for AEO's women's jeans.

26.     In addition to its substantial online promotion, AEO prominently features the AEO Design Mark on in-store displays, photography, and signage in AEO's more than 800 U.S. brick-and-mortar American Eagle retail locations across the country. In just the last five years,

more than 900 million consumers have visited AEO retail locations. Examples of AEO's promotion and use of the AEO Design Mark in its retail locations are shown below.











27.     Other longstanding brand-building activities for the AEO Design Mark include print catalogs and direct mail to the public. Examples of AEO's jeans advertising are shown below.







**AMERICAN EAGLE**
77 Hot Metal Street, Pittsburgh, PA 15203

**SAMPLE**
**YOUR EXCLUSIVE AEO CONNECTED®**
**CREDIT CARD OFFER IS INSIDE!**

Please deliver by: 9/5/2019

Sample A. Sample
123 Main Street
Anytown US 12345-6789





**THE FIT FACTOR**





Our top priority? Designing jeans that make you feel amazing. Find the fit that makes you feel unstoppable and make it yours.





**AMERICAN EAGLE**
77 Hot Metal St., Pittsburgh, PA 15203

**Sample,**
**look inside for a special offer just for you!**

Please deliver by: 5/31/2019

Sample A. Sample
123 Main Street
Anytown US 12345-6789







28.     AEO has also promoted the AEO Design Mark on outdoor signage and advertisements, including billboards in high-traffic public locations such as the famous New York Times Square, where the vibrant advertisement are themselves the main event, attracting hundreds of thousands of daily visitors.











 

29.     AEO has also for many years placed ads on third-party media outlets, including
websites and apps, that feature the AEO Design Mark, including on numerous popular and
highly trafficked websites such as vogue.com, glamour.com, coastalliving.com, bustle.com,
spotify.com, and the snapchat app, among others. AEO's online advertising has reached
hundreds of millions of consumers and potential consumers. Below are examples of online ads
placed by AEO that prominently feature and call out the AEO Design Mark.









## THE MEDIA AND THE RELEVANT CONSUMING PUBLIC
## HAVE LONG ASSOCIATED THE AEO DESIGN MARK WITH AEO

30.     Beyond AEO's marketing and promotional activities discussed above, for years, AEO's women's jeans bearing the AEO Design Mark have received prominent unsolicited and solicited media attention and publicity in a variety of U.S. print and online media. In particular, AEO's jeans bearing the AEO Design Mark have appeared in widely circulated print and online publications such as *Cosmopolitan, Teen Vogue, InStyle, Women's Health,* and *AdWeek*, among others*,* oftentimes in photographs of well-known celebrities donning AEO's jeans that prominently display the AEO Design Mark. In addition, AEO's jeans bearing the AEO Design Mark have been advertised and promoted by third-party social media "influencers," i.e., third parties with a high volume of social media followers that review, discuss, or promote others' products and services on their respective social media accounts. Such promotion in third-party media, examples of which are shown below, substantially increases the exposure of the AEO Design Mark.













31.   Consumers recognize the AEO Design Mark as a distinctive source identifier of AEO's women's jeans as shown below by the following representative consumer comments on a variety of online forums:

- "Though I can't be sure of the exact style short Kelsea is wearing from this limited view, the back pocket design confirms these are by American Eagle."

- "Sporting a full-on denim ensemble, Kendall Jenner's jeans sported the familiar American Eagle stitching on the back pocket. Spotting the trademark, fans soon logged on to the AE website and discovered that the jeans weren't the only item she purchased from them."

- "The pockets design on American Eagle is distinctive and you won't be fooling anyone . . ."

- "the[] particular pocket design that gives away the brand . . ."

- "the back pocket design is clearly an only American Eagle thing . . ."

- "But I too dislike the AE pocket logo – too distinct"

- "the back pocket embroidery is both well-known and noticeable. . ."

- "American Eagle uses distinctive stitching patterns on the back pockets of its jeans. On men's denim, the pattern is located toward the bottom of the pocket, while on women's denim, the stitching is thicker and the pattern is different."

32. As a result of AEO's long, extensive, and exclusive use of the AEO Design Mark, and AEO's significant sales, promotion, advertising, third-party attention, and commercial success under the mark, the AEO Design Mark, in addition to being an inherently distinctive source indicator, long ago acquired secondary meaning and is a well-known, commercially strong mark. U.S. consumers of women's jeans uniquely associate the AEO Design Mark with AEO and recognize AEO as the source of products bearing the distinctive AEO Design Mark.

**WALMART'S INFRINGEMENT OF
THE DISTINCTIVE AEO DESIGN MARK**

33. Long after AEO began using and acquired trademark rights in its well-known AEO Design Mark, Walmart began selling a private label line of women's jeans through its website www.walmart.com and at Walmart retail stores that feature the pocket stitching design shown below (the "Infringing Design").






34.     As shown in the images below, Walmart's Infringing Design is strikingly similar to the AEO Design Mark when compared side by side. When encountered at separate times, as most shoppers likely will do in the marketplace, the two designs are indistinguishable.

**<u>AEO Design Mark</u>**      **<u>Walmart's Infringing</u>**
**<u>Pocket Stitch Design</u>**

35.     Walmart prominently features the Infringing Design on its women's jeans and on
its website at www.walmart.com, including as separate, detailed product images for its women's
jeans as shown in the examples below.



36.     Walmart uses the Infringing Design to identify, advertise, promote, and sell its

women's jeans.

37.     Walmart adopted the Infringing Design well after AEO began using and acquired trademark rights in the AEO Design Mark, and long after AEO established itself as a market leader in the U.S. women's jeans market.

38.     Walmart's use of the Infringing Design on women's jeans falsely suggests and is likely to create the mistaken impression that AEO is the source of Walmart's Infringing Products, that AEO is owned by or controlled by Walmart, that AEO has approved Walmart's Infringing Products, that AEO has licensed its Design Mark for use on the Infringing Products, and/or that Walmart is otherwise affiliated with or connected with AEO or AEO's products. Indeed, the likelihood of confusion is exacerbated because Walmart also carries some genuine AEO products.

39.     In fact, consumers have already been confused and deceived into believing that Walmart's Infringing Products are made by, sponsored by, connected to, licensed by, or otherwise associated with AEO. Below is a chart of representative comments and questions reflecting such confusion and deception.

**January 25, 2020**

@jamiewaldow - New Walmart top. Walmart Time and Tru jeans. Target boots.

 

**January 28, 2020**

@jamiewaldow - Walmart top and Walmart jeans. More info on my YouTube

 

**February 10, 2020**
@gracemarie97 – Walmart clothing haul pt. 2!

 

**WALMART IGNORES AEO'S OBJECTIONS TO**
**WALMART'S WRONGFUL CONDUCT**

40. On February 10, 2020, AEO sent Walmart a letter in which AEO detailed AEO's rights in the AEO Design Mark and objected to Walmart's use of the Infringing Design in connection with Walmart's "Time and Tru" women's jeans. In response, Walmart claimed to "not have enough information regarding [AEO's] legal claim," even though AEO had identified both the AEO Design Mark and Walmart's Infringing Products. Rather than addressing AEO's serious claim and concerns, Walmart told AEO to "submit all claims through [Walmart's] online intellectual property reporting form."

41. AEO repeated its objections several times. Refusing to take responsibility, Walmart gave AEO the contact information for another company, the manufacturer that Walmart claimed had supplied the Infringing Products.

42.     On February 27, 2020, AEO received a letter from counsel representing Walmart's supplier, in which Walmart's supplier refused to discontinue using the Infringing Design. Walmart never provided a substantive response to AEO's objections and Walmart continues to promote and sell the Infringing Products bearing the Infringing Design under Walmart's "Time and Tru" brand on Walmart's website and in its hundreds of Walmart stores across the country.

43.     At the time Walmart selected, adopted, approved, and began use of the Infringing Design, Walmart knew or should have known of AEO's prior use and rights in the AEO Design Mark for its women's jeans. By commencing use of the Infringing Design despite such knowledge, Walmart acted in bad faith to take advantage of the reputation and goodwill of AEO and the AEO Design Mark.

44.     Walmart's continued use, advertisement, promotion, and offering of women's jeans featuring the Infringing Design demonstrate that Walmart willfully intended and intends to trade upon the goodwill of AEO and the AEO Design Mark and/or recklessly disregarded AEO's rights.

45.     Walmart's use of the Infringing Design falsely suggests and is likely to create the mistaken impression that Walmart is a part of AEO, that AEO sponsors or endorses Walmart or Walmart's products or licensed those products, and/or that Walmart is otherwise affiliated with or connected with AEO or AEO's products.

## INJURY TO AEO AND THE PUBLIC

46.     Walmart's actions with respect to the Infringing Design have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure AEO, the AEO Design Mark, and AEO's reputation and goodwill associated with the AEO Design

Mark. Walmart's actions also damage the public's interest in being free from confusion as to the source, sponsorship, and/or affiliation of Walmart's and AEO's products.

47.     Walmart's use of the Infringing Design is likely to cause confusion, mistake, or deception as to the source or origin of Walmart's products and commercial activities, and is likely to falsely suggest a sponsorship, connection, license, or association of Walmart and/or its products with AEO and/or AEO's products.

48.     Walmart knew or should have known of AEO's prior rights in the AEO Design Mark before adopting and using the Infringing Design, and thus Walmart has acted willfully with respect to AEO's prior trademark rights.

49.     AEO has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF**
**False Designation of Origin,**
**and Unfair Competition Under Section 43(a)(1)(A) of the**
**Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**

50.     AEO repeats and realleges each and every allegation set forth above.

51.     AEO's AEO Design Mark is inherently distinctive and acquired distinctiveness before Walmart's use of the Infringing Design by virtue of AEO's long, extensive, and exclusive use of the AEO Design Mark, and its significant sales, promotion, advertising, third-party attention, and commercial success under the mark, and relevant consumers recognize AEO as the source of products bearing the distinctive AEO Design Mark.

52.     Walmart's use of the Infringing Design, as described above, is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Walmart's products and commercial activities, and thus constitutes false designation of origin and unfair competition with respect to the AEO Design Mark, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

53.     The actions of Walmart described above have at all times relevant to this action been willful.

54.     As a direct and proximate result of the actions of Walmart as alleged above, AEO has been and will continue to be damaged and irreparably harmed.

55.     AEO has no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**Unlawful Acts or Practices Under**
**Unfair Trade Practices and Consumer Protection Law,**
**73 PA. CONS. STAT. § 201-1, *et seq.***

56.     AEO repeats and realleges each and every allegation set forth above.

57.     Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. § 201-1, *et seq*., prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

58.     Walmart's use of the Infringing Design, as described above, is causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services, and as to affiliation, connection or association with, or certification by, AEO.

59.     Walmart's use of the Infringing Design, as described above, constitutes unfair methods of competition and unfair deceptive acts or practices in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law § 201-3.

60.     The actions of Walmart described above have at all times relevant to this action been willful and, upon information and belief, Walmart intends to continue its unlawful, unfair, and deceptive activities unless restrained by this Court.

61.     As a direct and proximate result of the actions of Walmart as alleged above, Walmart has caused and is causing actual harm to AEO, including the loss of money and

property. In addition, as a direct and proximate result of the actions of Walmart as alleged above, AEO has been and will continue to be irreparably harmed.

62.     AEO has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
### Common Law Trademark Infringement, Unfair
### Competition, and Misappropriation

63.     AEO repeats and realleges each and every allegation set forth above.

64.     Walmart's use of the Infringing Design, as described above, constitutes common law trademark infringement, unfair competition, and misappropriation of AEO's goodwill under the common law of Pennsylvania.

65.     The actions of Walmart described above have at all times relevant to this action been willful.

66.     As a direct and proximate result of the actions of Walmart alleged above, AEO has been and will continue to be damaged and irreparably harmed.

67.     AEO has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, AEO prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.     An Order declaring that Walmart's use of the Infringing Design infringes the AEO Design Mark and constitutes trademark infringement, false designation of origin, unfair competition, and unfair or deceptive acts or practices under federal, state, and/or common law, as detailed above;

B.     An injunction permanently enjoining Walmart and its employees, officers, directors, principals, parents, subsidiaries, affiliates, related companies, and all persons in active

concert or participation with any of them:

      1.     From using, displaying, advertising, promoting, and registering the Infringing Design in any form, including but not limited to in connection with any other wording or designs, and from using any other marks, logos, designs, designations, or indicators that are confusingly similar to the AEO Design Mark, in any unauthorized manner including, but not limited to, use on or in connection with any products, including without limitation Walmart's jeans, Walmart's website(s), any other websites or online platforms including social media and apps, and promotional and advertising materials;

      2.     From representing by any means whatsoever, directly or indirectly, that Walmart, any products or services offered by Walmart, or any activities undertaken by Walmart, are associated or connected in any way with AEO, including, but not limited to, using the Infringing Design, or confusingly similar designs, logos, or marks; and

      3.     From instructing, assisting, aiding, or abetting any other person or business entity in engaging or in performing any of the activities referred to in subparagraphs B.1 through B.2 above.

C.     An Order directing Walmart to immediately destroy or permanently remove, as applicable, the Infringing Design and the Infringing Products from all retail stores, websites (including but not limited to Walmart's www.walmart.com website), third-party websites (including but not limited to Walmart's social media pages on Facebook, Twitter, and any other social media platforms), advertising, promotional materials, posters, displays, brochures, catalogs, newsletters, and any other materials and things that bear or display the Infringing Design, or any other designs, logos, or marks that are confusingly similar to the AEO Design Mark;

D.      An Order directing Walmart to immediately cancel all placements of any advertisements and listings in any media or format bearing or displaying the Infringing Design, or any other designs, logos, or marks that are confusingly similar to the AEO Design Mark;

E.      An Order requiring Walmart to pay AEO the cost for corrective advertising and/or to engage in corrective advertising in a manner directed by the Court;

F.      An Order directing Walmart to file with this Court and serve on AEO's attorneys, within thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the injunction;

G.      An Order requiring Walmart to account for and pay to AEO any and all profits arising from the foregoing acts of infringement, false designation of origin, and unfair competition, and increasing such profits for payment to AEO in accordance with 15 U.S.C. § 1117 and other applicable statutes and laws;

H.      An Order requiring Walmart to pay AEO compensatory damages in an amount as yet undetermined caused by the foregoing acts of false designation of origin and unfair competition;

I.      An Order requiring Walmart to account for and pay to AEO any and all profits arising from the foregoing acts of unfair competition and unfair or deceptive acts or practices under Pa. Unfair Trade Practices and Consumer Protection Law § 201-4.1;

J.      An Order requiring Walmart to pay AEO's costs and attorney fees in this action pursuant to 15 U.S.C. § 1117, and other applicable statutes and laws; and

K.      Other relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs respectfully demand a trial by jury for all claims so triable.


Dated:  March 24, 2020

*/s/ Thomas M. Pohl*
Thomas M. Pohl (Pa. I.D. No. 208080)
BURNS WHITE LLC
Burns White Center
48 26th Street
Pittsburgh, PA  15222
Tel.:      (412) 995-3000
Fax:      (412) 995-3300
Email:    tmpohl@burnswhite.com

Stephanie H. Bald (*pro hac vice pending*)
Robert D. Litowitz (*pro hac vice pending*)
Jason M. Joyal (*pro hac vice pending*)
KELLY IP, LLP
1300 19th Street, N.W., Suite 300
Washington, D.C 20036
Tel.:      (202) 808-3570
Fax:      (202) 354-5232
Email:    stephanie.bald@kelly-ip.com
             rob.litowitz@kelly-ip.com
             jason.joyal@kelly-ip.com

*Counsel for Plaintiffs*
*American Eagle Outfitters, Inc. and*
*Retail Royalty Company*