IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WALTER BERNARD,                                   C.A. No.

    Plaintiff,                              **Jury Trial Demanded**

v.

FORD MOTOR COMPANY

    Defendant,

## COMPLAINT IN CIVIL ACTION

### INTRODUCTION

Walter Bernard, an African-American, brings this lawsuit against his former employer, Ford Motor Company ('Ford"), alleging that Ford fired him on account of his race in violation of the U.S. Constitution and federal and state law which protect him from racial discrimination. Mr. Bernard also contends that Ford refused to accommodate his disability in violation of the Americans with Disabilities Act (ADA) and applicable state law. For six years Mr. Bernard worked for Ford as a Zone Manager. During this time Ford repeatedly and without justification changed his job duties and/or transferred him from one territory to another. Mr. Bernard's white co-workers were not only free from such adverse treatment but were regularly afforded preferential treatment at Mr. Bernard's expense. Ford made Mr. Bernard's final unwarranted and discriminatory transfer in violation of his physician's express opinion that such a transfer would interfere with Bernard's recovery from a traumatic brain injury. After six years of discriminatory adverse treatment, Ford fired Mr. Bernard on the pretext that his performance was unsatisfactory and replaced him with a less qualified white employee.

## JURISDICTION AND VENUE

1) The jurisdiction of this Court is invoked pursuant to 28 USC §§ 451, 1331, 1343 and 1345, and upon the doctrine of pendant and/or supplemental jurisdiction over any state law claims.

2) Venue is proper in this Court because the events described herein occurred predominantly in the Western District of Pennsylvania.

## PARTIES

3) Plaintiff Walter Bernard is an adult individual residing in Allegheny County, Pennsylvania.

4) At all times relevant hereto, Mr. Bernard was an employee of Ford Motor Company.

5) Defendant Ford Motor Company is a corporation authorized to conduct business in the State of Pennsylvania.

6) At all times relevant hereto, Ford was an "employer" as that term has been defined by the applicable statutes and acted by and through its duly authorized agents, assignees and/or employees, who were then and there acting within the course and scope of their employment.

## FACTS

7) Mr. Bernard is a former NFL player who, since his retirement from football due to injuries, has earned a Juris Doctor and a Master of Business Administration from Howard University.

8) Mr. Bernard was employed by Ford as a Zone Manager from January 2012 until Ford terminated his employment in May of 2019.

9) Between January of 2012 and May of 2019, Ford changed Mr. Bernard's territory and/or job duties four times. Mr. Bernard did not request any of these reassignments. Rather, they were done to accommodate the personal or professional desires of his white coworkers.

   a. *Zone Manager Positions at Ford*

10) Ford employs two types of Zone Managers; Parts and Service Zone Managers ("Service Managers") and Vehicle Sales Zone Managers ("Sales Managers.")

11) Ford divides its market area into several "regions." Each region is, in turn, divided up into multiple "zones." Each zone contains numerous dealerships and is assigned one Service Manager and one Sales Manager.

12) The duties and responsibilities of Service Managers and Sales Managers are very different.

13) Sales Managers are responsible for increasing the sale of new Ford cars to dealerships. They interact with a dealership's owner, general manager and salespeople. This position requires detailed knowledge of Ford's new car models and an understanding of the unique market needs of the particular zone to which the Manager is assigned.

14) Service Managers are responsible for increasing the sale of Ford parts to dealership service centers. This is primarily accomplished by implementing long term customer incentive and customer service improvement programs and by convincing

dealerships' parts managers to purchase parts directly from Ford. This position requires an understanding of auto mechanics, customer service and the unique needs of the service centers in the zone to which the manager is assigned.

15) Both positions require a Zone Manager to form lasting relationships with specific employees at the assigned dealerships in their zones in order to achieve performance objectives. Frequent reassignments severely hamper a Zone Manager's ability to develop the lasting relationships needed to maximize his or her performance objectives.

16) Ford permitted Caucasian Zone Managers in its Pittsburgh Region to remain in the same positions for years and/or transferred them only upon their request. African American Zone Managers were routinely transferred against their will and for the purpose of accommodating the personal or professional desires of their white counterparts.

### b. Mr. Bernard's Frequent Transfers and Reassignments

17) Mr. Bernard began his employment with Ford in January of 2012 as a Service Zone Manager in Zone E, which covered the State College area.

18) In July of 2013, Ford reassigned Mr. Bernard to Sales Manager in the same zone. Mr. Bernard did not request this reassignment.

19) In 2015, a white Sales Manager in Zone D, which covered the Pittsburgh Metro area, requested a transfer to Ohio because she no longer wanted to work in Pittsburgh. Ford granted her request and, in January 2016, reassigned Mr. Bernard to

her position as Sales Manager in Zone D.  He was told that he would remain in this position for an extended period of time.

20)     Although Mr. Bernard was performing well in this position, less than eight months after his transfer Ford notified him that a white Business Development Manager had asked for his position as Sales Manager in Zone D.  In January of 2017, Ford granted this employee's request and reassigned Mr. Bernard to Sales Manager in Zone C- Akron, Ohio.

21)     In 2018, Mr. Bernard's supervisor, Wes Ostic, informed him that a white Service Manager in Zone B - Youngstown, Ohio, who had been with Ford for less than a year, wanted Mr. Bernard's Sales Manager position in Zone C, and that Ford intended to grant this request.

22)     Mr. Bernard told Ostic that he did not want to be transferred again.  In a November, 2018 meeting with Ostic and Regional Manager Paul Busek, Mr. Bernard complained about his frequent reassignments and stated that he believed they were racially discriminatory. Mr. Bernard stated that he believed he and other African American employees were routinely transferred to accommodate white employees, while white employees were permitted to remain in the same positions unless they requested a move. He provided specific examples of this discriminatory treatment.

23)     Ford ignored Mr. Bernard's complaints and went through with the January 2019 transfer over his objections.

24) Mr. Bernard had not been a Service Manager for several years and needed updated training on how to perform in this position. He did not receive this training prior to assuming his new duties and received minimal and inadequate training afterwards.

25) Because of the nature of the Service Manager position, the financial performance of Mr. Bernard's zone during early 2019 reflected programs implemented by his predecessor and did not reflect Mr. Bernard's job performance.  It would take several months for the zone's performance to begin to reflect changes Mr. Bernard had implemented.

      c.  *Mr. Bernard's Termination*

26) In the Spring of 2019 Ford eliminated two positions in the Pittsburgh Region. One of the positions Ford eliminated was a Market Specialist position in the Pittsburgh Region.  Ford did not eliminate Mr. Bernard's position.

27) On May, 21 of 2019, Ford terminated Mr. Bernard's employment and gave his position to the employee who had previously held the market Specialist position.

28) On information and belief, this decision was made by the immediate supervisors to whom Mr. Bernard had complained at the November 2018 meeting or was based primarily on their recommendation.

29) The employee to whom Ford gave Mr. Bernard's position was white.

30) The employee to whom Ford gave Mr. Bernard's position was objectively less qualified than Mr. Bernard.  This employee had not worked as a Zone Manger for

several years and had no experience as a Service Zone Manager. She did not hold any relevant advanced degrees, as compared to Mr. Bernard's MBA and J.D.

31) Mr. Bernard was the only Pittsburgh Region employee who was laid off.

32) When Mr. Bernard asked why he was being terminated, he was told the decision was made based on his performance.

33) Despite having been transferred and/or reassigned repeatedly during his time with Ford, Mr. Bernard had received only positive performance reviews, continually met his objectives and was never informed that there were problems with his work. He received several awards from Ford commending his performance including Zone Manager of the Year in 2016.

34) If Ford identified any deficiencies in Mr. Bernard's job performance, these were the direct result of Ford repeatedly subjecting Mr. Bernard to transfers and changes of position to which it did not subject his white counterparts and/or Ford's failing to provide Mr. Bernard with training and development opportunities which it granted to his white counterparts.

   c. *Mr. Bernard's Disability*

35) During his career as an NFL football player Mr. Bernard sustained numerous concussions and head injuries resulting in a diagnosis of "traumatic brain injury." Since 2006, he has experienced symptoms such as depressive episodes, ADHD, light sensitivity, short term memory loss and migraines.

36) Because Mr. Bernard was able to manage these symptoms and perform the essential functions of his position without accommodation for many years, he did not tell his supervisors about his disability.

37) In November of 2017, Mr. Bernard was the victim of an assault and suffered another concussion which exacerbated his symptoms. His physician recommended that he be provided accommodations such as a flexible work schedule, frequent breaks and an end to the disruptions to his job duties and work environment cause by his frequent reassignments.

38) Mr. Bernard informed his immediate supervisor, Wes Ostic of the accident and his needed accommodations.  He also discussed his disability and needed accommodations with Regional Manager Paul Busek.  At no time did Ostic or Busek request any documentation of either his disability or his requested accommodations.

39) Because his position was largely self-directed, Mr. Bernard was generally able to continue to fulfill his job functions and  take breaks when needed, without specific approval from his supervisors.

40) When Mr. Bernard's supervisors informed him, in November of 2018, that Ford planned to reassign him again, he objected and reminded his supervisors of his physician's recommendations.  This conversation took place at the November 2018 meeting referenced *supra*.

41) Ford neither granted Mr. Bernard's request not to be reassigned because of his disabling medical condition, nor did it engage in an interactive process identify an

alternative reasonable accommodation. Ford never asked Mr. Bernard for any medical documentation of his need for an accommodation.

42) Following the reassignment, Mr. Bernard experienced difficulty adjusting to his new responsibilities and territory because of his disabling medical condition.

43) If Ford identified any deficiencies in Mr. Bernard's job performance following his transfer in January of 2019, these were the direct result of Ford having refused to grant him a reasonable accommodation for his disabling medical condition.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

44) Prior to filing this lawsuit, Mr. Bernard exhausted all necessary administrative procedures by filing appropriate charges with the Equal Employment Opportunity Commission (EEOC) and/or Pennsylvania Human Relations Commission (PHRC). A copy of the charge of discrimination filed on behalf of Mr. Bernard is attached hereto as Exhibit 1 and made a part hereof.

45) Mr. Bernard has received a "Dismissal and Notice of Rights" letter from the Equal Employment Opportunity Commission which is attached as Exhibit 2 and made a part hereof.

## COUNT I
## PENNSYLVANIA HUMAN RELATION ACT
## 43 P.S. 951, *et seq*.,

46) Based on the foregoing, Mr. Bernard alleges that Ford subjected him to discrimination on the basis of race in violation of the Pennsylvania Human Relations Act, 43 P.S. 951, *et seq*., by repeatedly subjecting him to reassignments to which it did not

subject his white counterparts and/or failing to provide him with training and development opportunities which it granted to his white counterparts.

47) Based on the foregoing, Mr. Bernard alleges that Ford subjected him to discrimination on the basis of race in violation of the Pennsylvania Human Relations Act, 43 P.S. 951, *et seq.*, by terminating him and giving his position to a less qualified white employee.

48) Based on the foregoing, Mr. Bernard alleges that Ford violated his rights under of the Pennsylvania Human Relations Act, 43 P.S. 951, *et seq.*, by retaliating against him for opposing race discrimination in his employment.

49) Based on the foregoing, Mr. Bernard alleges that Ford subjected him to discrimination on the basis of disability in violation of the Pennsylvania Human Relations Act, 43 P.S. 951, et seq., by failing to grant him a reasonable accommodation for his disability.

WHEREFORE, Mr. Bernard requests that this Honorable Court enter judgment in his favor for lost wages, compensatory damages, attorney's fees, costs and such other relief as this Court deems appropriate and equitable under the circumstances.

## COUNT II

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### 42 U.S.C. 2000e, *et seq*,

50) Based on the foregoing, Mr. Bernard alleges that Ford subjected him to discrimination on the basis of race in violation of Title VII of the Civil Rights act of 1964, 42 U.S.C. 2000e, *et seq*, by repeatedly subjecting him to reassignments to which it did

not subject his white counterparts and/or failing to provide him with training and development opportunities which it granted to his white counterparts.

51)     Based on the foregoing, Mr. Bernard alleges that Ford subjected him to discrimination based on race violation of Title VII of the Civil Rights act of 1964, 42 U.S.C. 2000e, *et seq*, by terminating him and giving his position to a less qualified white employee.

52)     Based on the foregoing, Mr. Bernard alleges that Ford violated his rights under Title VII of the Civil Rights act of 1964, 42 U.S.C. 2000e, *et seq.*, by retaliating against him for opposing race discrimination in his employment.

WHEREFORE, Mr. Bernard requests that this Honorable Court enter judgment in his favor for lost wages, compensatory damages, punitive damages, attorney's fees, costs and such other relief as this Court deems appropriate and equitable under the circumstances.

COUNT III

CIVIL RIGHTS ACT OF 1866
42 U.S.C. § 1981

53)     Based on the foregoing, Mr. Bernard alleges that Ford subjected him to discrimination on the basis of race in violation of the Civil Rights act of 1866, 42 U.S.C. § 1981, by repeatedly subjecting him to reassignments to which it did not subject his white counterparts and/or failing to provide him with training and development opportunities which it granted to his white counterparts.

54) Based on the foregoing, Mr. Bernard alleges that Ford subjected him to discrimination based on race in violation of Civil Rights Act of 1866, 42 U.S.C. § 1981, by terminating him and giving his position to a less qualified white employee.

55) Based on the foregoing, Mr. Bernard alleges that Ford violated his rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981, by retaliating against him for opposing race discrimination in his employment.

WHEREFORE, Mr. Bernard requests that this Honorable Court enter judgment in his favor for lost wages, compensatory damages, punitive damages, attorney's fees, costs and such other relief as this Court deems appropriate and equitable under the circumstances.

COUNT IV
AMERICANS WITH DISABILITIES ACT OF 1990
42 U.S.C. § 12101

41) Based on the foregoing, Mr. Bernard alleges that Ford subjected him to discrimination on the basis of disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, by failing to grant him a reasonable accommodation for his disability.

WHEREFORE, Mr. Bernard requests that this Honorable Court enter judgment in his favor for lost wages, compensatory damages, punitive damages, attorney's fees, costs and such other relief as this Court deems appropriate and equitable under the circumstances.

Respectfully Submitted:

/s/<u>Margaret S. Coleman</u>
Margaret S. Coleman, Esq.
PAID: 200975

Law Office of Timothy P. O'Brien
535 Smithfield Street, Suite 1025
Pittsburgh, PA  15222
(412) 232-4400