## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TAMMI KAUFMAN, KIMBERLY WIEMANN and KAREN WIEMANN, Individually and in her capacity as Administrator of the Estate of Walter Wiemann** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| **PLAINTIFFS,** | **No.** |
| **v.** | **Jury Trial Demanded** |
| **PENNSYLVANIA STATE POLICE, CORPORAL TIMOTHY MORANDO, in his individual and official capacities, TROOPER COSTINI, in his individual and official capacities, and TROOPERS JOHN/JANE DOE 1-30, in their individual and official capacities.** | |
| **DEFENDANTS.** | |

## COMPLAINT

AND NOW, come Plaintiffs, Tammi Kaufman, Kimberly Wiemann and Karen Wiemann, Individually and in Karen Wiemann's capacity as Administratrix of the Estate of Walter Wiemann, by and through their attorneys THE LINDSAY LAW FIRM, P.C., Alexander H. Lindsay Jr., Esquire, Max Roesch, Esquire, and J.P. Senich, Esquire, and file the following Complaint.

## I.    INTRODUCTION

1.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that the Defendants, acting under the color of law, violated Plaintiffs' Fourth Amendment rights when

1

they mounted a full-scale military style assault and siege, complete with helicopters and armored vehicles, in order to execute an involuntary psychological commitment warrant on Walter Wiemann, a veteran of the Vietnam War who suffered from dementia and Alzheimer's disease, leading eventually to Mr. Wiemann's death at the hands of Defendants.

## II.     JURISDICTION AND VENUE

2.     This action arises under 42 U.S.C. § 1983, and this Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and § 1343. This action arises under 42 U.S.C. § 1983.  This Court has jurisdiction of the action pursuant to 28 U.S.C. § 1331 and § 1343 and the Fourth and Fourteenth Amendment to the United States Constitution.  This Court further has supplemental jurisdiction to hear Plaintiff's state claims of pursuant to 28 U.S.C. § 1367(a).

3.     Venue is proper pursuant to 28 U.S. § 1391 in the Western District of Pennsylvania as this is the district where the cause of action arose, the district where the transactions and occurrences took place out of which the cause of action arose, and is a district in which Defendants regularly conduct activity.

## III.     PARTIES

4.     Plaintiff, Tammi Kaufman is a resident of the Commonwealth of Pennsylvania and the daughter of Walter Wiemann.

5.     Plaintiff, Kimberly Wiemann is a resident of the Commonwealth of Pennsylvania and the daughter of Walter Wiemann.

6.     Plaintiff, Karen Wiemann is a resident of the Commonwealth of Pennsylvania and the Administrator of the Estate of Walter Wiemann.

7.     Defendant Pennsylvania State Police Department is a law enforcement agency established and operating under the laws of the Commonwealth of Pennsylvania.

## IV.     FACTUAL ALLEGATIONS

8.      Walter Wiemann was a 73-year-old Vietnam War veteran who suffered symptoms of severe Post-Traumatic Stress Disorder (PTSD) and diagnosed with Alzheimer's Disease/Dementia.

9.      Due to Walter Wiemann's ailments, he often believed he was in combat in Vietnam, often could not recall things, and often became agitated due to not being able to remember.

10.      During the morning of September 18, 2018, Walter Wiemann became upset because beehives that kept no longer had bees in them.

11.      Walter Wiemann and his family had cleaned out the beehives and burnt the remains to address an infection of mites sometime before the incident.

12.      Walter Wiemann did not remember cleaning the beehives and wondered aloud if his neighbors had interfered with his bees.

13.      As Mr. Wiemann became more and more agitated, Plaintiff Tammi Kaufman called 911 and informed the operator of the situation and her father's diagnoses.

14.      The 911 operator informed Plaintiff Kaufman she would connect her directly to the Pennsylvania State Police (PSP).

15.      Plaintiff Kaufman contacted PSP and related the situation to the answering officer, and advised him that Mr. Wiemann was a Vietnam veteran suffering from PTSD and Alzheimer's Disease/Dementia.

16.      Plaintiff Kaufman was told to contact the Center for Community Resources Crisis Center to receive help for Wiemann, which she did.

17.      Plaintiff Kaufman, Karen Wiemann, PSP, and a representative from the crisis

center met at Connoquenessing Park.

18.     PSP troopers responded to the Wiemann residence and saw Mr. Wiemann in his garage. They claimed that since there was a vehicle in the garage they could not adequately determine what Mr. Wiemann was doing or if he had any weapons. They also indicated that the long length of the driveway prohibited them from seeing Mr. Wiemann or identifying themselves. It should be noted that the garage is visible from Nursery Road.

19.     Karen Wiemann and Tammi Kaufman advised PSP officers that Walter Wiemann was unreachable by phone because the ringer was disabled.

20.     Plaintiffs had disabled the telephone ringer because the ringing agitated Mr. Wiemann, exacerbating his PTSD and Alzheimer's.

21.     Plaintiffs further informed PSP that Mr. Wiemann had access to one antique hunting rifle stored in a gun cabinet, but that the rifle was not loaded.

22.     Representatives of the crisis center and Corporal Morando of the PSP informed Plaintiffs that they had to complete a §302 form to involuntarily commit Wiemann.

23.     Corporal Morando advised Plaintiffs that PSP "would be required to use force" if Plaintiffs did not complete the §302 form, as the situation would be treated as a crime and not a mental health situation.

24.     Karen Wiemann signed the §302 form to involuntarily commit Wiemann because she was told that the form would protect her husband's rights.

25.     While completing the §302 form, Plaintiffs reminded Corporal Morando and other PSP officers that Mr. Wiemann suffered from PTSD and was a diagnosed Alzheimer's Disease/Dementia patient.

26.     PSP then attempted to call Wiemann on the telephone, despite being informed that

the ringer to the phone in the house had been disabled because it agitated Wiemann's mental illnesses.

27.     Plaintiffs again informed PSP officers that the telephone ringer had been disabled.

28.     PSP officers continued to attempt to reach Mr. Wiemann by telephone, despite Plaintiffs' repeated reminders that the ringer was disabled.

29.     Apparently frustrated by their inability to reach Mr. Wiemann telephonically, PSP elected to escalate their response.

30.     The Special Emergency Response Team (SERT), which included over 30 PSP troopers, an armored military vehicle, and at least one helicopter, responded to the scene to execute the §302 warrant.

31.     SERT set up a sniper perimeter around Mr. Wiemann's residence.

32.     SERT deployed a helicopter, which hovered over Mr. Wiemann's residence.

33.     SERT deployed a BearCat, an armored military vehicle, with approximately 10 to 12 officers on the driveway of Mr. Wiemann's residence.

34.     The sounds of the helicopters (one of which was possibly a news helicopter deployed by KDKA), the BearCat, and armed members of the SERT resembled a military exercise reminiscent of Mr. Wiemann's combat experiences in Vietnam.

35.     SERT held Mr. Wiemann's residence under siege for approximately four hours.

36.     During the course of the siege, Plaintiffs Tammi Kaufman and Karen Wiemann pled with Corporal Morando and other PSP officers to de-escalate the situation, repeatedly reminding them that Mr. Wiemann's diagnoses made him susceptible to agitation.

37.     Plaintiff Kaufman asked if she or Mrs. Wiemann would be permitted approach her father's residence, explaining that her or her mother's presence could calm her father down.

38.     Defendants refused to allow Tammi Kaufman or Karen Wiemann approach the residence.

39.     Plaintiff Kaufman asked if the SERT would record her or her mother's voice speaking to Mr. Wiemann in order to calm him down.

40.     Defendants attempted to record her and her mother's voice on a voice recorder but struggled to find the batteries required to operate it.

41.     They also attempted to use a cell phone but neither Tammi Kaufman nor Karen Wiemann ever heard the recording; they believe, to the best of their knowledge and information, that no recordings of the family members' voices were ever effectively captured.

42.     At some point during the siege, the barn was set on fire and began to smoke. Presumably Mr. Wiemann saw the smoke and left the main residence to investigate the source of the smoke. Mr. Wiemann began walking toward the barn, which is about 50 feet from the residence.

43.     PSP did not remove any police officers, vehicles, or helicopters from the vicinity in an attempt to de-escalate. When Mr. Wiemann was walking toward the barn, he turned, presumably because the BearCat was in his front yard, and saw the armored vehicle and squad cars.

44.     The siege finally ended when Walter Wiemann was shot in the back of the head by a PSP officer or officers who took 12-14 shots at him while he was standing in an open part of the yard between the residence and the barn.

45.     After Mr. Wiemann was shot in the head once and shoulders two times, the SERT deployed "flash bang" grenades to ensure Walter Wiemann was not "faking his injuries" before medical aid was rendered to him.

46.     The day after Walter Wiemann's death, Tammi Kaufman found a footprint on the side of the barn door that did not belong to anyone in their family.

47.     Plaintiffs also discovered fire damage to the barn that was not caused by Walter Wiemann or anyone in their family; presumably, the fire was started intentionally by the SERT team as part of their "military" strategy to lure Wiemann to his barn.

## V.      LEGAL CLAIMS

### COUNT I—(Violation of 42 U.S.C. § 1983—Violation of Fourth Amendment)

**TAMMI KAUFMAN, on behalf of the estate of Walter Wiemann, KIMBERLY WIEMANN on behalf of the estate of Walter Wiemann and KAREN WIEMANN, on behalf of the estate of Walter Wiemann v. PENNSYLVANIA  STATE POLICE, CORPORAL TIMOTHY MORANDO, TROOPER COSTINI in their individual and official capacities, and TROOPERS JOHN DOE 1-30, in their individual and official capacities.**

48.     The prior paragraphs are hereby incorporated by reference as though fully set forth herein.

49.     Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

50.     The Fourth Amendment provides in relevant part: "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be

seized."

51.     The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

52.     Defendant are state actors subject to the Fourth Amendment.

53.     Defendants acted under color of state law and exceeded the scope of the §302 warrant.

54.     In determining reasonableness, a court is to consider the following factors: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight. *See Graham*, 490 U.S. at 396.

55.     A court in making a reasonableness assessment also may consider the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. *See Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir.1997).

56.     PSP went to Wiemann's home to effectuate a warrant for an involuntary commitment for Wiemann.

57.     In this case, PSP knew that Wiemann had multiple mental illnesses that prevented him from conducting himself in a rational manner.

58.     In addition to 30 plus PSP officers, the police deployed a helicopter and an armored vehicle to aid in the effectuating of the §302 warrant.

59.     This amount of responders exceeded the amount necessary or even prudent to secure Wiemann's arrest.

60.     Defendants exceeded the scope of the warrant by conducting a military style assault and siege on the property and failing to attempt to reason with Wiemann before shooting him.

WHEREFORE, Plaintiffs demand judgment against the Defendants in an amount in excess of the arbitrations limits, plus costs, punitive damages, and such relief as the Court may deem proper.

**A JURY TRIAL IS DEMANDED.**

**COUNT II—(Violation of 42 U.S.C. § 1983—Violation of Fourteenth Amendment**)

**TAMMI KAUFMAN, on behalf of the estate of Walter Wiemann, KIMBERLY WIEMANN on behalf of the estate of Walter Wiemann and KAREN WIEMANN, on behalf of the estate of Walter Wiemann v. PENNSYLVANIA STATE POLICE, CORPORAL TIMOTHY MORANDO, TROOPER COSTINI in their individual and official capacities, and TROOPERS JOHN DOE 1-30, in their individual and official capacities.**

61.     The prior paragraphs are hereby incorporated by reference as though fully set forth herein.

62.     In order to succeed under a 14th Amendment claim of the state-created danger doctrine, the plaintiff must show: "(1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." *See Estate of Smith v. Marasco*, 318 F.3d 497,506 (3d. Circ. 2003).

63.     The harm of having in excess of 30 police officers, and armored vehicle, and a helicopter respond to a situation where a man was suffering from PTSD and Alzheimer's disease

was foreseeable.

64.    PSP acted in willful disregard for the safety of Wiemann through ignoring his diagnosis and using aggressive tactics to "de-escalate" the situation such as helicopters and flash bangs.

65.    Police officers exerting control over the situation is sufficient to meet the relationship requirement, as the officers are an agent of the state.

66.    What's more is that Tammi Kaufman had a previous interaction with Trooper Costini who informed her that he had family members with Alzheimer's Disease and that he understood the agitation symptoms that sometimes effects individuals with the disease.

67.    Trooper Costini also continued to assure Karen Wiemann and Tammi Kaufman that the responding officers were trained to deal with situations involving people with mental illness and that they would keep Wiemann safe and get him to a hospital for treatment.

68.    Those assurances continued throughout the day, until they informed the family that "they had to shoot" Mr. Wiemann.

69.    The last element can be shown through the disregard for Wiemann's pre-existing mental state and diagnosed medical conditions when planning their response.

70.     Furthermore, the outcome would have been different if the police officers reacted in a different manner, which took into, account the deceased's mental illnesses and medical conditions.

WHEREFORE, Plaintiffs demand judgment against the Defendant in an amount in excess of the arbitrations limits, plus costs, punitive damages, and such relief as the Court may deem proper.

**A JURY TRIAL IS DEMANDED.**

*Pendant State Claims*

### COUNT III—(Assault)

**TAMMI KAUFMAN, on behalf of the estate of Walter Wiemann, KIMBERLY WIEMANN on behalf of the estate of Walter Wiemann and KAREN WIEMANN, on behalf of the estate of Walter Wiemann v. PENNSYLVANIA STATE POLICE, CORPORAL TIMOTHY MORANDO, TROOPER COSTINI in their individual and official capacities, and TROOPERS JOHN DOE 1-30, in their individual and official capacities.**

71.     The prior paragraphs are incorporated by reference as if fully set forth herein.

72.     Defendant intended to cause a harmful or offensive contact with Wiemann and caused Wiemann to be in imminent apprehension of such contact.

73.     Defendant used more than threatening words to put Wiemann in reasonable apprehension of physical injury because they were in a position to carry out the threat immediately.

74.     Defendant's harmful or offensive contact caused Wiemann to be in reasonable apprehension of physical injury.

75.     The aggressive actions of PSP caused Wiemann to be in reasonable apprehension of physical injury.

76.     As a direct result of Defendant's unlawful conduct, Wiemann suffered actual physical injuries including the loss of his life.

WHEREFORE, Plaintiffs respectfully request judgment against the Defendants for monetary and compensatory damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, and other damages as the Court deems appropriate.

**A JURY TRIAL IS DEMANDED.**

## COUNT IV—(Battery)

**TAMMI KAUFMAN, on behalf of the estate of Walter Wiemann, KIMBERLY WIEMANN on behalf of the estate of Walter Wiemann and KAREN WIEMANN, on behalf of the estate of Walter Wiemann v. PENNSYLVANIA STATE POLICE, CORPORAL TIMOTHY MORANDO, TROOPER COSTINI in their individual and official capacities, and TROOPERS JOHN DOE 1-30, in their individual and official capacities.**

77.    Plaintiff incorporates by reference the prior paragraphs as if fully set forth herein.

78.    Defendant PSP touched Wiemann in a way that was harmful and offensive without his consent as more fully set forth above.

79.    Defendant PSP intended to cause a harmful or offensive contact with Wiemann or put him in imminent apprehension of such a contact, and the offensive contact with Plaintiff resulted.

80.    Specifically, Defendant PSP acted with an intent to cause a harmful or offensive contact, through Defendant's use of flash bangs on Wiemann and shooting him in the head.

81.    The actions of Defendant PSP constitute willful misconduct.

82.    As a direct result of Defendant's unlawful conduct, Wiemann has suffered actual physical injuries including the loss of his life.

WHEREFORE, Plaintiffs respectfully request judgment against the Defendants for monetary and compensatory damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, and other damages as the Court deems appropriate.

**A JURY TRIAL IS DEMANDED.**

**COUNT V—(Intentional Infliction of Emotional Distress)**

**TAMMI KAUFMAN, on behalf of the estate of Walter Wiemann, KIMBERLY WIEMANN on behalf of the estate of Walter Wiemann and KAREN WIEMANN, on behalf of the estate of Walter Wiemann v. PENNSYLVANIA STATE POLICE, CORPORAL TIMOTHY MORANDO, TROOPER COSTINI in their individual and official capacities, and TROOPERS JOHN DOE 1-30, in their individual and official capacities.**

83.    The prior paragraphs are incorporated herein by reference as if set forth fully at length.

84.    Defendant PSP's actions in disregarding information about Wiemann's mental health and escalating events which culminated in Wiemann's death house was made with a tortious intent for the purpose of inflicting upon the Plaintiffs severe and acute emotional distress.

85.    Defendant's  actions were made with the intent to harm and harass the Plaintiffs and made with a reckless disregard of the truth and a reckless disregard of the Plaintiffs' rights and therefore entitle the Plaintiffs to receive punitive or exemplary damages in an amount to be determine at a trial upon the issues.

86.    The previously mentioned intentional and wanton acts of Defendant has caused Plaintiffs severe emotional distress.

87.    Because of the Defendants' actions, Plaintiffs greatly fear calling the police.

88.    Defendants conduct herein was extreme and outrageous, and Defendants acted intentionally and recklessly and with willful misconduct thereby causing severe emotional distress to Plaintiffs.

89.    "Willful misconduct, for the purposes of tort law, has been defined by [the Pennsylvania] Supreme Court to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such

desire can be implied." *Renk v. Pittsburgh,* 537 Pa. 68, 641 A.2d 289, 293 (1994) (citing *Evans v. Phila. Transp. Co.,* 418 Pa. 567, 212 A.2d 440, 443 (1965)).

90.     Defendant's conduct in disregarding information about Wiemann's state of mind that would have de-escalated the situation and saved his life would (and has) caused average members of the community to arouse his resentment against the Defendant and lead him to exclaim, "Outrageous!"

91.     As a direct result of Defendants' unlawful conduct, Plaintiffs have suffered actual physical and emotional injuries, and other damages and losses as described herein entitling them to compensatory and special damages, in amounts to be determined at trial.

WHEREFORE, Plaintiffs respectfully request judgment against the Defendants for monetary and compensatory damages in an amount in excess of the jurisdictional limit of said Court, plus court costs, interest, and other damages as the Court deems appropriate.

**A JURY TRIAL IS DEMANDED.**

**COUNT VI—(Loss of Consortium)**

**TAMMI KAUFMAN, on behalf of the estate of Walter Wiemann, KIMBERLY WIEMANN on behalf of the estate of Walter Wiemann and KAREN WIEMANN, on behalf of the estate of Walter Wiemann v. PENNSYLVANIA  STATE POLICE, CORPORAL TIMOTHY MORANDO, TROOPER COSTINI in their individual and official capacities, and TROOPERS JOHN DOE 1-30, in their individual and official capacities.**

92.     The prior paragraphs are incorporated herein by reference as if set forth fully at length.

93.     As a result of this incident and the aforementioned loss of life incurred by Walter Wiemann, his wife Plaintiff Karen Wiemann has suffered the loss of her husband's companionship, society, cooperation, affection, assistance, and conjugal fellowship.

92.      Plaintiff Karen Wiemann and he late husband Walter Wiemann's damages were in

no manner due to any act, or failure to act, on the part of Walter Wiemann.

93.     As a result of his death, Walter Wiemann is unable to provide aid to his wife, Plaintiff Karen Wiemann.

94.     As a result of Defendant's negligence, Walter Wiemann is deceased.

WHEREFORE, Plaintiffs bring this suit against Defendant to recover damages in excess of the jurisdiction of the Board of Arbitrators of this Court and in excess of Arbitration limits.

**A JURY TRIAL IS DEMANDED.**

### COUNT VII—(Wrongful Death Action)

**TAMMI KAUFMAN, on behalf of the estate of Walter Wiemann, KIMBERLY WIEMANN on behalf of the estate of Walter Wiemann and KAREN WIEMANN, on behalf of the estate of Walter Wiemann v. PENNSYLVANIA STATE POLICE, CORPORAL TIMOTHY MORANDO, TROOPER COSTINI in their individual and official capacities, and TROOPERS JOHN DOE 1-30, in their individual and official capacities.**

95. The prior paragraphs are incorporated herein by reference as if set forth fully at length.

96.      Plaintiff brings this action as the personal representative of the Decedent's Estate pursuant to 42 Pa.C.S.A. '8301(d).

97.     The persons entitled to recover damages for Wrongful Death are as follows:

a. Karen E. Wiemann, 129 Nursery Road., Renfrew, PA 16053 (wife).

b. Tammi Kaufman, Ifft Road, Rochester, PA 15074 (daughter).

c. Kimberly Wiemann, 82 Robinhill Drive, Lititz, PA 17543 (daughter).

98.     Plaintiffs demand all lawful damages for the wrongful death of Walter Wiemann for all persons entitled to recover such damages, including damages for medical expenses, expenses of estate administration, the loss of expected pecuniary contributions of the decedent, and the loss of decedent's care, comfort, companionship, society, consortium, guidance and

tutelage.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, and claim of Defendants a sum in excess of the jurisdictional limit for arbitration, in compensatory damages, with lawful interest thereon, damages pursuant to Rule 238, and costs of suit.

### COUNT VIII—(Survival Action)

**TAMMI KAUFMAN, on behalf of the estate of Walter Wiemann, KIMBERLY WIEMANN on behalf of the estate of Walter Wiemann and KAREN WIEMANN, on behalf of the estate of Walter Wiemann v. PENNSYLVANIA STATE POLICE, CORPORAL TIMOTHY MORANDO, TROOPER COSTINI in their individual and official capacities, and TROOPERS JOHN DOE 1-30, in their individual and official capacities.**

99.     The prior paragraphs are incorporated herein by reference as if set forth fully at length.

100.     Plaintiff brings this action on behalf of the Estate of Walter Wiemann pursuant to the Pennsylvania Survival Act, 42 Pa.C.S.A. '8302, and claims on behalf of the Estate all damages recoverable by law, including but not limited to damages for Decedent's pain and suffering, loss of earnings and loss of future earning capacity.

101.     Plaintiff also seeks, and is entitled to recover, punitive damages against these Defendants.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants, and claim of Defendants a sum in excess of the jurisdictional limit for arbitration in compensatory and punitive damages, with lawful interest thereon, damages pursuant to Rule 238, and costs of suit.

Respectfully submitted:

THE LINDSAY LAW FIRM, P.C.,

*s/ Alexander H. Lindsay, Jr.*
Alexander Lindsay, Esq.
Pa. Supreme Court Id. No. 15088
110 East Diamond Street, Suite 301
Butler, Pennsylvania 16001
Phone: (724) 282-6600

*s/ Max Roesch*
Max Roesch, Esq.
Attorney for Plaintiff
Pa. Supreme Court Id. No. 326577
110 East Diamond Street, Suite 301
Butler, Pennsylvania 16001
Phone:  (724) 282-6600

*s/ J.P.Senich*
J.P. Senich, Esq.
Attorney for Plaintiff
Pa. Supreme Court Id. No. 317813
110 East Diamond Street, Suite 301
Butler, Pennsylvania 16001
Phone:  (724) 282-6600