IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BAYLEY COLVIN,<br><br>    Plaintiff,<br><br>v.<br><br>EMS SOUTHWEST, INC,<br><br>    Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, Bayley Colvin, by and through her attorney, Prabhu Narahari, Esq., of Ruppert Manes Narahari LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this Complaint to recover damages under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.* Plaintiff alleges that she was wrongfully terminated from her position after she disclosed to management that she was pregnant.

### II. Jurisdiction and Venue

2. This action arises under the Title VII. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action

is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

5. Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding her allegations under Title VII on December 13, 2019, under charge number 533-2020-00480. *See Exhibit 1*.

6. Plaintiff was mailed Notice of Right to Sue from the ("EEOC") on July 7, 2020. This Complaint has been filed within ninety days of the Plaintiffs receipt, thus making this action timely. *See Exhibit 2.*

### III. Parties

7. Plaintiff, Bayley Colvin ("Plaintiff"), is an adult individual with a primary residence located at 154 Carmichaels Street, Rices Landing, PA 15357.

8. Defendant, EMS Southwest, Inc. ("Defendant"), is a Pennsylvania business corporation headquartered at 4158 Old William Penn Highway, Murrysville, PA 15668 with a regular place of business located at 509 Rolling Meadows Road, Waynesburg, PA, 15370.

### IV. Facts

9. Plaintiff began working for Defendant on September 4, 2019. Defendant is a regional ambulance and emergency services company. It employs between twenty and fifty individuals.

10. Plaintiff was hired by Defendant as an EMT-B Cadet. Upon her hiring, she completed a course in emergency training and graduated at the top of her class.

11. Upon completion of the program, Plaintiff was moved from the position of EMT-B Cadet to Paratransit Driver and Emergency Medical Technician for Defendant.

12. Soon after, Plaintiff learned that she was pregnant.

13. On October 27, 2019, Plaintiff informed Rob Bowman, a director for Defendant, of her pregnancy. Mr. Bowman told Plaintiff that there was no problem and that she could continue to work for Defendant throughout her pregnancy.

14. Although she did not specifically request specific accommodations at that time, Mr. Bowman told Plaintiff that she would be restricted from all heavy lifting during her pregnancy while she worked for Defendant.

15. Plaintiff agreed and additionally expressed an intention to continue to work for Defendant until her baby was born, maintaining her job duties to the fullest extent possible.

16. As her pregnancy progressed, Plaintiff was required to take off between one and two days per month to attend prenatal appointments, as is common in the early stages of pregnancy. Plaintiff properly requested all of the days that she needed to take off, and Defendant approved all of her requests.

17. However, at one point, at the request of her doctor's office, Plaintiff had to unexpectedly rearrange a scheduled appointment. She approached Yvonne Pritchard, assistant director of dispatching for Defendant, and asked if the alteration would be acceptable. Ms. Pritchard agreed, but warned Plaintiff that "it's not our [Defendant] fault that you're pregnant." Ms. Pritchard further stated that Defendant would not make additional accommodations for Plaintiff regarding her pregnancy.

18. During this period in her pregnancy, Plaintiff began to experience severe symptoms of morning sickness, including nausea and vomiting. On several occasions, while driving into work, Plaintiff had to pull over to vomit on the side of the road. Despite this, she tried to get to her scheduled shifts on time, and, at no point, did she call off of work due to morning sickness.

19. Plaintiff, on a couple of occasions, was late to work by a matter of a few minutes due to her nausea and vomiting. She was told by Ms. Pritchard and Defendant employee Heather Reedy that her slight tardiness was unacceptable. Ms. Pritchard and Ms. Reedy told Plaintiff that other employees who had previously been pregnant had never had morning sickness which resulted in them coming in a few minutes late.

20. Plaintiff was not offered the option to stay a few minutes late to make up for her slight tardiness. Instead, she was written up for being late.

21. Plaintiff was required to take off of work on December 10 and 11, 2019 for an abscessed tooth extraction. She provided a doctor's excuse for the absence and received approval from Ms. Pritchard. Plaintiff returned to work on December 12, 2019, and worked without incident.

22. The next day, on December 13, 2019, Plaintiff was called into a meeting with Ms. Pritchard and Defendant employee Ryan Rosak. Ms. Pritchard and Mr. Rosak explained to Plaintiff that, due to "budget cuts," her position was terminated.

23. Plaintiff inquired as to why she was the first employee to be terminated, and she was informed that, in making the decision of which employee to terminate, Defendant had to "look at certain circumstances." Plaintiff requested clarification regarding the meaning of the phrase "certain circumstances," and she was to that there was "nothing to be confused about."

24. Ms. Pritchard and Mr. Rosak further stated that Plaintiff had been the most recent hire, so it was natural that she would be the first to be terminated. However, there were two additional female employees hired at the same time. She was not the most recently hired employee, and there was, at the time, an employee in the training program who had not yet been certified who retained her position.

25. Finally, Ms. Pritchard and Mr. Rosak told Plaintiff that her specific position was eliminated due to the alleged budget cuts; however, the position was not eliminated. No other employees were terminated in the wake of Plaintiff's dismissal.

## COUNT I
## Pregnancy Discrimination in Violation of Title VII

26. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

27. The Pregnancy Discrimination Act ("PDA") is a 1978 amendment to Title VII, "mandates that employers treat pregnant employees the same as non-pregnant employees who are similarly situated with respect to their ability to work." Doe v. C.A.R.S. Protec. Plus, Inc., 527 F.3d 358, 364 (3d Cir. 2008), order clarified, 543 F. 3d 178 (3d Cir. 2008).

28. Under Title VII, the term "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees […]" 42 U.S.C.A. §2000e. The Defendant is an employer within the meaning of Title VII, as it employs more than fifteen individuals.

29. Plaintiff was employed by Defendant between September and December 2019.

30. In order to state a *prima facie* case for pregnancy discrimination under Title VII, a plaintiff must show:

   a. Evidence to support that she was, in fact, pregnant;

   b. Her employer had "actual knowledge" of her pregnancy;

   c. She was otherwise "qualified for her job" and subsequently "suffered an adverse employment decision;" and

   d. Evidence to support "some nexus between her pregnancy and the adverse employment action." Doe, 527 F.3d, 358 at 356.

31. Here, Plaintiff is able to satisfy the first element of pregnancy discrimination because she was, undoubtedly, pregnant.

32. Additionally, Plaintiff specifically informed Rob Bowman, a director for Defendant, of her pregnancy. She also specifically discussed details of her pregnancy with Defendant employees Yvonne Pritchard, Heather Reedy, and Ryan Rosak.

33. Plaintiff was qualified for her position. She passed the certification course at the top of her class, and she had no disciplinary warnings other than those related to her pregnancy.

34. Plaintiff suffered adverse employment action when she was terminated due to alleged budget cuts. This reasoning is mere pretext, as no other employee was terminated related to budget costs. Plaintiff was further told that she was selected for termination due to "certain circumstances" which were not explained to her.

35. The "certain circumstances" leading to Plaintiff's termination was clearly and exclusively related to her pregnancy.

36. There is further a clear nexus between the Plaintiff's pregnancy and her termination for the following reasons:

   a. When Plaintiff rescheduled a doctor's appointment, Ms. Pritchard informed her that it was not Defendant's fault that she was pregnant.

   b. Plaintiff was told that Defendant would not provide her with further accommodations throughout her pregnancy.

   c. Plaintiff was written up for being just a few minutes late to work due to extreme morning sickness.

   d. When Plaintiff informed Ms. Pritchard that she was late to work due to pregnancy-related nausea, Ms. Pritchard told Plaintiff that other employees who had been

pregnant were never late, effectively applying the symptoms of one woman's pregnancy to Plaintiff's pregnancy.

e. Plaintiff was terminated due to budget cuts; however, no other employees were terminated in the alleged budget cuts. Additionally, a more junior employee was able to continue in her employment for Defendant after Plaintiff was terminated.

WHEREFORE, Plaintiff hereby respectfully requests that this Court enter judgement in her favor, and against Defendant, and award all damages available at law in equity, including: lost wages, front pay, compensatory damages, punitive damages, court costs, attorney fees, prejudgment and continuing interest, and any other relief that the Court deems necessary and proper.

## COUNT II
### Pregnancy Discrimination in Violation of PHRA

37. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

38. An examination of pregnancy discrimination under the PHRA "is analyzed in an identical manner" to Title VII. Solomen v. Redwood Advisory Co., 183 F. Supp. 2d 748, 751 (E.D. Pa. 2002).

39. As stated above, Plaintiff was pregnant.

40. Plaintiff informed Defendant of her pregnancy.

41. Plaintiff was otherwise qualified for her position. Adverse employment action was taken against her when she was wrongfully terminated by Defendant.

42. Defendant's reasoning for Plaintiff's termination is mere pretext, as no other employees were terminated in the alleged budget cuts. As a result, there is clear evidence to support a nexus between Plaintiff's pregnancy and her resulting termination.

WHEREFORE, Plaintiff hereby respectfully requests that this Court enter judgement in her favor, and against Defendant, and award all damages available at law in equity, including: lost wages, front pay, compensatory damages, punitive damages, court costs, attorney fees, prejudgment and continuing interest, and any other relief that the Court deems necessary and proper.

    Respectfully Submitted,

/s/ Prabhu Narahari
Prabhu Narahari, Esq.
PA ID: 323895
**Ruppert Manes Narahari LLC**
600 Grant St., Suite 4875
Pittsburgh, PA 15219
(412) 626-5588 Direct
(412) 650-4845 Fax
pn@rmn-law.com

## VERIFICATION

I, Bayley Colvin, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

_____
Bayley Colvin