## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANSYS, INC.,<br><br>   Plaintiff,<br><br>V.<br><br>ACTOX CORPORATION, AL HATSET and<br>DOES 1 THROUGH 10.<br><br>   Defendants. | CIVIL ACTION NO. |

### COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, ANSYS, Inc. ("Plaintiff"), brings this action against Defendants, Actox

Corporation ("Actox"), Al Hatset ("Mr. Hatset") and Does 1 through 10 (collectively

"Defendants"), for copyright infringement in violation of 17 U.S.C. § 101 et seq.  By this

Complaint, Plaintiff seeks, inter alia, injunctive relief, monetary damages, and attorney's fees

under 17 U.S.C. §§ 106, 501, 502, 504 and 505, and alleges as follows:

### THE PARTIES

1.     Plaintiff is a corporation with a principal place of business located at Southpointe,

2600 ANSYS Drive, Canonsburg, Pennsylvania 15317.

2.     Plaintiff is the owner of copyright registrations for its ANSYS HFSS and

Electronics Desktop software modular suite of software programs.

3.     Actox is a corporation with headquarters located at 2951 Norman Strasse Road,

Unit A, San Marcos, California 92069.

4.    Mr. Hatset is the Chief Executive Officer of Actox, and has a business address of 2951 Norman Strasse Road, Unit A, San Marcos, California 92069.  As Chief Executive Officer of Actox, Mr. Hatset is a principal, guiding spirit, central figure, and the moving, active, conscious force behind Actox's copyright infringement, and has control over the day to day operations thereof, and directly benefits from the copyright infringement and tortious conduct alleged herein.

5.    Plaintiff is unaware of the true names and capacities of DOES 1 through 10, inclusive, and therefore sues said defendants by such fictitious names.  Plaintiff will ask leave of Court to amend this Complaint to state the true names and capacities of the defendants sued as DOES when the same are ascertained.  Plaintiff is informed and believes, and based thereon alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as herein alleged, were proximately caused by their conduct.

6.    Plaintiff is informed and believes, and on that basis alleges, that at all times relevant to this action, each of the Defendants were the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and were at all times acting within the scope of such agency, affiliation, alter-ego, relationship and/or employment, and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged herein with full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

## JURISDICTION AND VENUE

7.    This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101 et seq.

2

8.      This Court has original and exclusive jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      Supplemental subject matter jurisdiction may be properly exercised by this Court pursuant to 28 U.S.C. § 1367 as this Court has original jurisdiction of claims asserted under 28 U.S.C. §§ 1331 and 1338(a) and 17 U.S.C. § 101 et seq.

10.     Plaintiff is informed and believes that this Court may properly exercise at least specific personal jurisdiction over the Defendants because under the terms of the ANSYS Software License Agreement (the "SLA"), the parties have agreed that all rights and use of ANSYS HFSS and the Electronics Desktop software are governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, and the sole and exclusive jurisdiction and venue for any litigation arising from or relating to the SLA and ANSYS software shall be in a state or federal court maintaining jurisdiction over Washington County, Pennsylvania.  By agreeing to the terms of the SLA, and conducting business with Plaintiff within this District beginning in 2015, and having this litigation arise at least in part due to Defendants breach of the SLA, Defendants have purposely availed themselves to the privilege of conducting business within this District and thus have submitted to personal jurisdiction in the United States District Court for the Western District of Pennsylvania.

11.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and/or § 1400(a).

### THE ASSERTED COPYRIGHTS

12.     U.S. Copyright Registration No. TX 8-268-143, registered on November 17, 2016, and titled Ansoft HFSS Version 13 is owned by the Plaintiff.

13.     U.S. Copyright Registration No. TX 8-268-152, registered on November 17, 2016, and titled Ansoft Maxwell Version 14 is owned by the Plaintiff.

14.     U.S. Copyright Registration No. TX 8-710-784, registered on April 19, 2019, and titled Maxwell 16.0 is owned by the Plaintiff.

15.     U.S. Copyright Registration No. TX 8-710-785, registered on April 19, 2019, and titled HFSS 15.0 is owned by the Plaintiff.

16.     U.S. Copyright Registration No. TX 8-710-789, registered on April 19, 2019, and titled ANSYS Electromagnetics Suite 15.0 (including Designer, HFSS, Maxwell, Q3D Extractor, Slwave) is owned by the Plaintiff.

17.     U.S. Copyright Registration No. TX 8-714-692, registered on April 29, 2019, and titled ANSYS 14.5 is owned by the Plaintiff.

18.     U.S. Copyright Registration No. TX 8-780-315, registered on August 19, 2019, and titled ANSYS 15.0 is owned by the Plaintiff.

## BACKGROUND FACTS

19.     Plaintiff is a global leader in engineering simulation software.  With its portfolio of engineering simulation software, Plaintiff helps its customers solve complex design challenges and engineer products.  Plaintiff provides services in a wide range of industries, including the Aerospace and Defense, Automotive, Construction, Consumer Goods and Energy industries.

20.     Two of Plaintiff's flagship products are the ANSYS HFSS and the Electronics Desktop modular suite of software programs (hereinafter the "ANSYS Software").  The ANSYS Software is protected by the asserted copyrights referenced in ¶¶ 12-18 of this Complaint.

21.     ANSYS HFSS is a 3D electromagnetic simulation software for designing and simulating high-frequency electronic products such as antennas, antenna arrays, RF or

microwave components, high-speed interconnects, filters, connectors, IC packages and printed

circuit boards.  Engineers worldwide use ANSYS HFSS to design high-frequency, high-speed

electronics found in communications systems, radar systems, advanced driver assistance

systems, satellites, internet-of-things (IoT) products, and other high-speed RF and digital

devices.

22.     ANSYS Electronics Desktop is a comprehensive platform that enables electrical

engineers to design and simulate various electrical, electronic and electromagnetic components,

devices and systems.  It is a unified interface which creates and analyzes electromagnetic,

thermal and circuit designs. Engineers can access gold-standard tools such as ANSYS HFSS,

ANSYS Maxwell, ANSYS Q3D Extractor and ANSYS Icepak using electrical CAD and

mechanical CAD workflows.

23.     ANSYS regularly improves, updates and adds features when it releases new

versions of the ANSYS Software.

24.     Each new version of ANSYS Software is substantially similar to the preceding

version, and in most cases, to other earlier versions of ANSYS Software.

25.     Plaintiff licenses ANSYS Software to its customers.  Customers may purchase

single user licenses or multi-user licenses.  In either case, the number of simultaneous users or

end-users may not exceed the number of licenses purchased.  Plaintiff prevents unauthorized

access of its software through the use of a Security Mechanism.  Plaintiff's license agreement

states that customers are not allowed to use the software without the Security Mechanism, and

that the software can detect the installation or use of illegal copies of the software and collect and

transmit data about those illegal copies.

26.     Piracy of software occurs when users access software for which they have not purchased a valid license.  The ease of digital replication of software lends itself to illegal copying of software, where users may make multiple copies of a software program, and then distribute the copies to users who have not made a legal purchase of the software (i.e., either distributing the software for free, or selling the copies of the software at deeply discounted prices).  The licensing associated with ANSYS Software limits how many licensed versions of ANSYS Software can be used at once, but Plaintiff allows those licensed organizations to install ANSYS Software on an unlimited number of computers.

27.     In an effort to reduce the use of illegally copied software, software providers implement license verification technology where the software will not function unless a license has been legally purchased.  The license verification technology may be a software mechanism or a physical mechanism to be attached to a single computer.  The license verification technology may be in the form of a key (i.e., a series of numbers and letters) that a user types in during the software installation process, or a hardware device, where the software will only operate correctly when the hardware device is attached to the computer executing the software.  The license verification technology is provided by the software provider to the buyer when the software is purchased legally.  Users who have not made a legitimate purchase of the software will not have access to the key or hardware device provided by the software provider, and therefore the software will not function properly.  Plaintiff provides license verification technology as a component of the above-mentioned Security Mechanism.

28.     Software hackers reverse engineer the security mechanism and then provide processes and utilities to bypass the license enforcement in order to allow unauthorized use of the software.  These processes and utilities mimic the license verification technology (i.e., keys,

hardware devices, etc.) as a means to allow pirated software to function fully as legally purchased software.  Software utilities that mimic the license verification technology are often referred to as "cracked" licenses.  Software hackers may also create hacked versions of the software such that a license is not needed during installation.

29.     Sophisticated websites exist where illegally obtained software, the software utilities that mimic the license verification technology, and hacked versions of the software may be downloaded and installed by those who do not want to pay for properly licensed software. Each hacked version of the software represents a lost sale and/or license for the company that owns the software, and for resellers of the software (who may provide hardware installation and support, and software configuration, customization, and maintenance).  A study by the Business Software Alliance reported that properly licensed software has a positive impact on national economic activity that is more than three times the impact of pirated software.[1]

30.     Software that has been hacked or modified to use a cracked license may also contain malware that can damage computer systems, and/or infiltrate the computer network and the data on that network.  In a report commissioned by the Business Software Alliance, the higher the pirated software rate in a country, the more malware generally encountered on computers in that country.[2]  Software that has been hacked may also not operate properly, negatively impacting the reputation of the software company that now has no oversight or control over the quality of the hacked versions of its software in use, and/or the products produced by that software.

---

[1] https://gss.bsa.org/wp-content/uploads/2018/05/2018_BSA_GSS_Report_en.pdf

[2] https://www.bsa.org/news-events/news/report-finds-unlicensed-software-and-malware-are-tightly-linked-1

31.     Piracy Detection and Reporting Security Software (PDRSS) exists to identify instances of pirated software in use and provides the identity and location of organizations utilizing the pirated software to the software providers.  Identification of pirated software allows the software providers to take legal action against intentional software piracy, notify unwitting organizations of the illegal use of the software (and the potential malware problems that can accompany pirated software), and sell valid software licenses in the place of the previously illegally obtained software programs to recoup lost sales.  Plaintiff identifies instances of pirated software in use through PDRSS which, along with the license verification technology, is a component of the Security Mechanism.

32.     PDRSS providers also identify the means by which software hackers have thwarted the license verification technology (i.e., the aforementioned cracked license) for a particular software program.  For example, PDRSS providers may accomplish this by downloading pirated software from the above-mentioned websites and determining how the software hackers were able to bypass the license verification technology.  Once the software hackers' methods are identified, the PDRSS providers then work with software providers, such as Plaintiff to map out a plan for determining when pirated software is in use.  This includes identifying when the pirated software is using a cracked license.

33.     The plan may include a variety of forms for identifying software piracy.  The plan may also include defining software use patterns that are indicative of software piracy.  PDRSS providers work with software providers to determine various patterns that are indicative of pirated software use, and thresholds at which the PDRSS software should begin to gather and report data on the computer using the pirated software.  For example, it is common for a potential customer to test out a software program for a short period of time before deciding to

8

purchase the software package legally. However, an organization that continues to use illegally downloaded software for an extended period (i.e., beyond a reasonable test period as defined by the software provider) has breached the threshold of a trial period. Another threshold might be the detection of a cracked license which is an indication of an anomaly within the software, or other suspicious patterns of use of the software.

34.     Software providers, such as Plaintiff, embed the PDRSS (according to the plan tailored specifically for that software provider) within their software, validate that the patterns and thresholds will trigger on pirated software (and will not trigger on validly purchased software), and then release the software. The software that contains the embedded PDRSS also provides a clear notice within the Software License Agreement ("SLA") of the existence of the PDRSS within the software. Once new versions of software are released, both legally purchased software and the eventually pirated software will contain the embedded PDRSS that triggers data reporting when suspicious patterns and thresholds are detected.

35.     Cracked versions of ANSYS Software downloaded from a pirate website still contain a Clickwrap version of the SLA that the user of the pirated software must agree to before gaining access to the software program. Attached hereto as Exhibit 1 are the Clickwrap license agreements to the corresponding versions of the unlicensed Ansys Software downloaded, accessed and used by the Defendants.

36.     The serial number of the license is a unique identifier and helps in identifying unauthorized versions of the software. Multiple versions of software using the same serial number are indicative of unauthorized versions of software using a cracked license. In some cases, illegal license generators create license files having serial numbers that are inconsistent

with the serial numbers generated by the software providers, which is also indicative of a cracked license.

      37.      The IP address is a unique address used to identify computers on the global network of the internet. An IP address is the numerical sequence by which a computer on the public internet can identify another computer on the public internet. IP addresses are in the form xxx.xxx.xxx.xxx where each xxx must be a number between 0 – 255.

      38.      The identifying name of a computer is typically a name an organization gives to each computer in the organization for easy identification within the organization. For example, identifying computer names Computer_Lab_1 and Computer_Lab_2 are easy to remember, and help employees within the organization easily reference particular computers, rather than, for example, referring to computers by a serial number associated with the computer hardware.

      39.      A Media Access Control ("MAC") address is a unique hardware identifier assigned to network interfaces. Every device that makes a physical connection to the network, whether it is an Ethernet card or port or wireless connection has a unique and specific address. Thus, a computer with both an Ethernet connection and a wireless connection has two unique MAC addresses. A MAC address is a series of numbers and letters. When a network device is manufactured, it is assigned a MAC address at the factory. The first six digits of a MAC address represent the device manufacturer, which can be looked up on the Internet.

      40.      Reporting data from the embedded PDRSS includes a variety of information to identify the software that has been pirated and the organizations utilizing the pirated software, such as the version of the software being used, the license serial number, the Internet Protocol ("IP") address of the organization where the pirated software is running, the identifying name of the computer, and a MAC address. Through the Security Mechanism, Plaintiff collects the

aforementioned identifying information to determine when pirated and unlicensed versions of its software are being utilized.

41.     Software providers may track their own reporting data or may use third party providers to track the reporting data.  Once pirated copies of software are identified, software providers can notify the organizations using the software, and request that they purchase validly licensed copies of the software instead of using the pirated software.

42.     Through the use of PDRSS, Plaintiff has identified Defendants as using unlicensed and pirated ANSYS Software.

43.     According to its website, Actox was founded upon decades of international business experience in the fields of telecommunications and software development of its principal investors.  Through years of close association in manufacturing, marketing and systems integration, the company's organizational development is dedicated to applying established e-commerce tools to simplify the selection and purchase of components as well as systems for Internet via Satellite applications.

44.     Plaintiff has detected at least two hundred seventy-eight (278) instances of unauthorized access of the ANSYS Software by Defendants through the use of PDRSS.  The PDRSS reported three (3) computers located at Actox running an unauthorized version of the ANSYS Software between February 23, 2015 through March 26, 2020.

45.     On January 27, 2020, Plaintiff sent a letter to Steven Chidester at Actox to discuss the infringement of the ANSYS Software, and to discuss a resolution for the unlicensed, pirated use of the software.

46.     Similar letters were also sent to Paul Daves at Actox on March 20, 2020, March 23, 2020 and April 8, 2020.

11

47.     ANSYS sent a similar letter to Nick Davies at Actox on April 7, 2020.

48.     However, no one from Actox adequately responded to Plaintiff's outreach concerning the unlicensed, pirated use of the ANSYS Software.

49.     On June 30, 2020, McInnes & McLane, LLP ("M&M") sent a letter to Mr. Hatset via email and priority mail through the United States Post Office on behalf of Plaintiff.

50.     The June 30, 2020 letter provided information related to the infringing use of the ANSYS Software, and a request that Actox contact M&M to discuss a resolution to the matter. The letter provided that if the parties could not come to a resolution, ANSYS would be forced to seek one through the Court.

51.     After receiving the letter, Mr. Hatset reached out to M&M, and stated Actox did respond to the January 27, 2020 outreach by Plaintiff, and stated at the time that he did not believe there was infringement of the ANSYS Software.  He stated he did not receive the subsequent communications from the Plaintiff.

52.     Mr. Hatset stated that he still believed there was no such infringement, despite receiving additional information from M&M, and indicated that Actox was not interested in resolving the issue without Court intervention.

53.     Upon information and belief, Defendants continue to infringe upon Plaintiff's Copyrights by using unlicensed, pirated versions of ANSYS Software.

54.     As a direct and proximate result of Defendants' acts of infringement, the Plaintiff has suffered damages and will continue to suffer damages.

55.     As a direct and proximate result of Defendants' acts of infringement, the Plaintiff has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law.

12

## COUNT ONE

### Infringement of ANSYS Software Registration Number TX 8-268-143 ("ANSYS 143"), by Defendants, 17 U.S.C. §§ 106 and 501

56.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

57.     Defendants have knowingly and intentionally infringed, and continue to infringe ANSYS 143, and will continue to do so unless enjoined by this Court.

58.     As a direct and proximate consequence of Defendants' infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

59.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

## COUNT TWO

### Infringement of ANSYS Software Registration Number TX 8-268-152 ("ANSYS 152"), by Defendants, 17 U.S.C. §§ 106 and 501

60.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

61.     Defendants have knowingly and intentionally infringed, and continue to infringe ANSYS 152, and will continue to do so unless enjoined by this Court.

62.     As a direct and proximate consequence of Defendants' infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights,

and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

63.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

## COUNT THREE

### Infringement of ANSYS Software Registration Number TX 8-710-784 ("ANSYS 784"), by Defendants, 17 U.S.C. §§ 106 and 501

64.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

65.     Defendants have knowingly and intentionally infringed, and continue to infringe ANSYS 784, and will continue to do so unless enjoined by this Court.

66.     As a direct and proximate consequence of Defendants' infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

67.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

## COUNT FOUR

### Infringement of ANSYS Software Registration Number TX 8-710-785 ("ANSYS 785") by Defendants, 17 U.S.C. §§ 106 and 501

68.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

14

69.     Defendants have knowingly and intentionally infringed, and continue to infringe ANSYS 785, and will continue to do so unless enjoined by this Court.

70.     As a direct and proximate consequence of Defendants' infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

71.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

## COUNT FIVE

### Infringement of ANSYS Software Registration Number TX 8-710-789 ("ANSYS 789") by Defendants, 17 U.S.C. §§ 106 and 501

72.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

73.     Defendants have knowingly and intentionally infringed, and continue to infringe ANSYS 789, and will continue to do so unless enjoined by this Court.

74.     As a direct and proximate consequence of Defendants' infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

75.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

15

## COUNT SIX

### Infringement of ANSYS Software Registration Number TX 8-714-692 ("ANSYS 692"), by Defendants, 17 U.S.C. §§ 106 and 501

76.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

77.     Defendants have knowingly and intentionally infringed, and continue to infringe ANSYS 692, and will continue to do so unless enjoined by this Court.

78.     As a direct and proximate consequence of Defendants' infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

79.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

## COUNT SEVEN

### Infringement of ANSYS Software Registration Number TX 8-780-315 ("ANSYS 315"), by Defendants, 17 U.S.C. §§ 106 and 501

80.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

81.     Defendants have knowingly and intentionally infringed, and continue to infringe ANSYS 315, and will continue to do so unless enjoined by this Court.

82.     As a direct and proximate consequence of Defendants' infringing acts, the Plaintiff has suffered and will continue to suffer injury and damages, and unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights,

16

and will suffer and continue to suffer injury and damages, which are causing irreparable harm and for which Plaintiff is entitled to relief.

83.     Upon information and belief, the aforementioned infringement is knowing, intentional and willful.

## COUNT EIGHT

### Breach of Contract

84.     The Plaintiff incorporates the previous paragraphs of this Complaint by reference and re-alleges them as originally and fully set forth herein.

85.     Plaintiff and Defendants entered into an SLA wherein Defendants expressly and impliedly agreed to the terms and conditions set forth in the SLA.

86.     Defendants breached the SLA by illegally downloading and using pirated versions of ANSYS Software without proper authorization or payment to ANSYS as required by the SLA.

87.     As a direct and proximate result of Defendant's breach of the SLA, Plaintiff has sustained damages.


WHEREFORE, Plaintiff, ANSYS, Inc., respectfully requests that this Court enter judgment in its favor and against Defendants and requests relief as follows:

A.     Judgment be entered in its favor and against Defendants on each count of the Complaint;

B.     Declaring that Defendants have infringed the ANSYS Software;

C.     Declaring that the foregoing infringement was willful and knowing;

17

      D.     Entry of a preliminary and thereafter permanent injunction prohibiting the

Defendants, and their agents, servants and employees, and all persons acting in concert with, or

for them from continuing to reproduce, distribute, display, disseminate, transmit, make available

for download or otherwise use the ANSYS Software in any manner whatsoever appropriating or

in violation of the Plaintiff's Copyrights;

      E.     Award Plaintiff its actual damages and Defendants' additional profits in an

amount to be determined at trial;

      F.     Award Plaintiff prejudgment interest;

      G.     Award Plaintiff its costs, attorney's fees and expenses arising from this suit; and

      H.     Grant Plaintiff such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts of its Complaint so triable.

Dated: November 5, 2020

By: /s/ A. Patricia Diulus-Myers, Esq.
    A. Patricia Diulus-Myers, Esq.
    Pa. I.D. No. 33337
    Segmiller & Associates, P.C.
    Rivertech Centre
    3700 South Water Street, Suite 130
    Pittsburgh, PA 15203
    Phone: (412) 227-5884
    Fax: (412) 227-5887
    apdm@segmend.com

By: /s/ John T. McInnes
    John T. McInnes, Esq.
    BBO# 657488
    McInnes & McLane, LLP
    9 Exchange Street
    Worcester, MA 01608
    Phone: (774) 420-2360
    Fax: (866) 610-0507
    john@mcmcip.com