IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES E. THOMAS; MARSHA HALL; and, MARK THOMAS, Individually and as Co-Administrators of the ESTATE of ELIZABETH M. THOMAS, Deceased,

    Plaintiffs,

vs.

WESTMORELAND COUNTY; and, WESTMORELAND COUNTY d/b/a WESTMORELAND MANOR,

    Defendants.

No.:

## PLAINTIFF'S COMPLAINT

AND NOW, comes the Plaintiffs, Charles E. Thomas; Marsha Hall; and, Mark Thomas, Individually and as Co-Administrators of the Estate of Elizabeth M. Thomas, Deceased, by and through their undersigned counsel, Max Petruyna, Esquire, and the law firm of Max Petrunya, P.C., and files this Complaint for the Defendant's violations of duties imposed upon them under the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. § 1396r, *et seq.*, and the implementing regulations found at 42 C.F.R. § 483, *et seq,* and for violations of the Constitution of the United States of America under Amendment 14, enforceable under 42 U.S.C. § 1983, against the Defendants Westmoreland County and Westmoreland County d/b/a Westmoreland Manor.

### Nature of Action

1. This is a proceeding under 42 U.S.C. § 1983 to remedy violations of duties under the Omnibus Budget Reconciliation Act of 1987, the Federal Nursing Home Reform Act, the

Federal Nursing Home Regulations, as found at 42 C.F.R. § 483, and the Constitution of the United States of America.

## Jurisdiction and Venue

2. As the instant case presents issues of Federal Law, jurisdiction is proper in this forum as a federal question, pursuant to 28 U.S.C. § 1331.

3. Venue lies within this judicial district, since all of the actions complained of herein occurred within the Western District of Pennsylvania.

## Parties

4. Plaintiffs Charles E. Thomas, Marsha Hall and Mark Thomas are the adult children of the Decedent, Elizabeth M. Thomas.

5. Plaintiffs Charles E. Thomas, Marsha Hall and, Mark Thomas, were appointed as Administrators of the Estate of Elizabeth M. Thomas by the Register of Wills of Westmoreland County on June 18, 2019.

6. Defendant Westmoreland County is a governmental agency, with its governmental offices located at 2 North Main Street, Suite 101, Greensburg, Westmoreland County, Pennsylvania 15601.

7. Defendant Westmoreland County, as a governmental agency, at all times relevant hereto, was acting under color of state law.

8. At the time of the incidents pled herein, Defendant Westmoreland County owned and operated Westmoreland Manor, a skilled nursing facility located at 2480 South Grande Boulevard, Greensburg, Westmoreland County, Pennsylvania.

9. Because Westmoreland Manor was owned and operated by Westmoreland County, Westmoreland County is a proper party Defendant to this matter.

10. At all times relevant hereto, Westmoreland Manor operated as a "long term care nursing facility" as that term is defined in 35 P.S. §448.802A. Accordingly, Westmoreland Manor is a "licensed professional" as that term is defined in 40 P.S. 1303.503.

11. At all times relevant hereto, Westmoreland Manor operated as a "skilled nursing facility" as that term is defined at 42 U.S.C. §1395i-3.

12. At all times relevant hereto, Westmoreland Manor was acting under the control of Westmoreland County, and was acting by and through its authorized agents, servants and employees then and there acting within the course and scope of their employment.

13. Defendant Westmoreland County is a county government organized and existing under the laws of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Westmoreland County, acting through Westmoreland Manor was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to the Westmoreland Manor facility and was responsible for the appointment, training, supervision and conduct of all Westmoreland Manor personnel. In addition, at all relevant times, Defendant Westmoreland County was responsible for enforcing the rules of the Westmoreland Manor facility and for ensuring that personnel employed in the facility obey the Constitution and laws of the United States and of the Commonwealth of Pennsylvania.

14. Hereinafter, Westmoreland County and Westmoreland Manor will collectively be referred to as "Westmoreland Manor".

15. At all times relevant hereto, Plaintiffs' Decedent, Elizabeth Thomas, was covered under Medicare.

16. No other actions have been commenced regarding the injuries Elizabeth Thomas sustained at Westmoreland Manor.

**Statement of Claims**

17. The facts relevant to the causes of action stated herein were known, or in the exercise of due diligence, should have been known to Defendant Westmoreland Manor during Elizabeth Thomas' residency at the facility, or upon her discharge from its facility.

18. Elizabeth Thomas was admitted to Westmoreland Manor on December 4, 2018 following a hospitalization at Excela Hospital (hereinafter "Excela").

19. Upon admission, Ms. Thomas had a hydration evaluation which indicated no signs or symptoms of dehydration.

20. One day after admission, on December 5, 2018, Ms. Thomas was transferred to Excela with slurred speech.

21. On December 7, 2018, Ms. Thomas was readmitted to Defendant Westmoreland Manor.

22. Four days later, on December 11, 2018, a urine sample was obtained from Ms. Thomas.

23. Following the urine test, the staff at Defendant Westmoreland Manor encouraged fluids for Ms. Thomas.

24. On December 16, 2018, Ms. Thomas suffered a fall with no injuries.

25. On December 25, 2018, Ms. Thomas had an episode of altered mental status and unresponsiveness along with right-sided facial drooping and slurred speech.

26. These symptoms subsided and Ms. Thomas was not transferred to a higher level of care.

27. For the next several weeks, Ms. Thomas remained a resident at the facility without consequence.

28. On January 15, 2019, new orders were received for Ms. Thomas for an EEG 24-hour Holter monitor and a physical therapy consultation for safety.

29. On January 18, 2019, at 12:41 a.m., it was noted that Ms. Thomas had urinary retention and it was further noted that she did not void during the evening shift.

30. Accordingly, a bladder scan was conducted wherein it was determined that Ms. Thomas was retaining 420 cc of urine.

31. Ms. Thomas was catharized and 300 cc of urine was returned as a result of the catheterization.

32. Despite this change in Ms. Thomas' condition, the staff at Defendant Westmoreland Manor failed to notify a physician.

33. However, a nursing note was entered that said, "On MD book."

34. On that same date, the day shift nurse indicated that Ms. Thomas had poor PO (by mouth) intake.

35. However, again, Ms. Thomas' physician was not notified.

36. Later that same day, a physician did examine Ms. Thomas.

37. Following the examination, no new orders were entered and there is no indication that the physician was made aware of Ms. Thomas' poor PO intake.

38. On January 19, 2019, one member of the nursing staff encouraged fluids but no other staff at Defendant Westmoreland Manor encouraged fluids for Ms. Thomas.

39. Two days later, on January 21, 2019, it was noted that Ms. Thomas was having difficulty staying alert, had poor PO intake and was frequently complaining of nausea and multiple episodes of urinary retention.

40. That same date, Ms. Thomas was transferred to Excela after Ms. Thomas' daughter reported that her mother had a change in condition from the prior week.

41. According to Ms. Thomas' chart, her blood pressure was 88/57 prior to being discharged to the hospital.

42. It was noted at or around that same time that Ms. Thomas was pale, diaphoretic and lethargic.

43. Upon admission to Excela, it was also noted that Ms. Thomas had vomited.

44. According to the documentation from Excela, Ms. Thomas was admitted with diagnoses of pancreatitis, UTI, dehydration and elevated magnesium and BUN.

45. It was also noted that she was hypotensive upon admission.

46. An EKG also revealed that Ms. Thomas had sinus tachycardia and a prior anteroseptal infarction.

47. As it relates to her diagnoses upon admission, both the low blood pressure and increased heart rate are signs of dehydration and distress.

48. Ms. Thomas remained at Excela until January 27, 2019 when she was readmitted to Westmoreland Manor.

49. Upon her discharge from Excela, it was noted that Ms. Thomas had been treated for pancreatitis, acute kidney injury, elevated blood urea nitrogen, vomiting, dehydration, urinary tract infection and hypotension.

50. It was also noted that Ms. Thomas had a Stage II pressure ulcer.

51. Upon readmission to Westmoreland Manor, Ms. Thomas had a hydration evaluation and it was noted that fluids were to be offered and encouraged.

52. On January 30, 2019, Ms. Thomas had a nutrition evaluation wherein it was concluded that she had experienced a ten-pound weight loss in the past month.

53. On February 1, 2019, blood laboratories were completed that indicated that Ms. Thomas was experiencing hypernatremia (sodium was 156), BUN of 47 and a white blood cell count of 16.5.

54. These laboratory results were indicative of dehydration and infection.

55. A nurse practitioner from Defendant Westmoreland Manor reviewed the laboratory results and ordered a follow-up in one week with fluid encouragement.

56. However, no other immediate intervention was implemented to address Ms. Thomas' extremely elevated white blood cell or sodium level.

57. The next day, a Defendant Westmoreland Manor staff nurse documented poor fluid intake.

58. Again, no physician or family was notified.

59. That evening, it was noted that Ms. Thomas was lethargic.

60. At or around 7:26 p.m., new orders were finally entered for IV fluids.

61. However, at 9:30 p.m., after Defendant Westmoreland Manor nursing staff were unable to start an IV on Ms. Thomas, she was transferred to Excela.

62. The nursing staff at Defendant Westmoreland Manor were unable to start an IV on Ms. Thomas because she was dehydrated.

63. Upon admission, Ms. Thomas was diagnosed with severe sepsis, urinary tract infection, acute kidney failure, pneumonia, hypernatremia and altered mental status.

64. Additionally, following laboratory studies at Excela, it was also determined that Ms. Thomas was suffering from dehydration.

65. Over the next several days, Ms. Thomas' condition continued to decline.

66. On February 8, 2019, Ms. Thomas died.

67. According to her death certificate, Ms. Thomas died as a result of respiratory failure and pneumonia.

## COUNT I

### Deprivation of Civil Rights Enforceable Via 42 U.S.C. § 1983

68. All of the preceding paragraphs of the within Complaint are incorporated herein as if set forth more fully at length.

69. Defendant Westmoreland Manor is an agent of the Commonwealth of Pennsylvania, and at all times relevant to this Complaint was acting under the color of state law.

70. Defendant Westmoreland Manor is bound generally by the Omnibus Budget Reconciliation Act of 1987 ("OBRA") and the Federal Nursing Home Reform Act ("FNHRA") which was contained within the Omnibus Reconciliation Act of 1987. See 42 U.S.C. § 1396r, 42 U.S.C. § 1396(a)(w), as incorporated by 42 U.S.C. § 1396r.

71. Defendant Westmoreland Manor is also bound generally by OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483, *et seq.*, which served to define specific statutory rights set forth in the above-mentioned statutes.

72. The specific detailed regulatory provisions, as well as the statutes in question, create rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

73. Upon information and belief, Defendant Westmoreland Manor, as a custom and policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Defendant Westmoreland Manor failed to implement and follow appropriate custom and policies

and/or, in the alternative, Defendant Westmoreland Manor had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

74. Defendant Westmoreland Manor, in derogation of the above statutes and regulations, and as a custom and policy, failed to comply with the afore-mentioned regulations, as follows:

    a. By failing, as a custom and policy, to care for patients, including Ms. Thomas, in a manner that promoted maintenance or enhancement of her life, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(1)(A);

    b. By failing, as a custom and policy, to notify the family members of residents, including Ms. Thomas, concerning a significant change in condition as required by 42 C.F.R. § 483.10;

    c. By failing, as a custom and policy, to promote the care of residents, including Ms. Thomas, in a manner and in an environment that maintained or enhanced her dignity, as required by C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(1)(A);

    d. By failing, as a custom and policy, to develop a comprehensive Care Plan and assessment for residents, including Ms. Thomas, as required by 42 C.F.R. § 483.21 and 42 U.S.C. § 1396r(b)(2)(A);

    e. By failing, as a custom and policy, to provide residents, including Ms. Thomas, the necessary care and services to allow her to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(3)(A);

    f. By failing, as a custom and policy, to provide residents, including Ms. Thomas, the necessary care and services to preclude them from becoming dehydrated and developing a urinary tract infection and sepsis, as required by 42 C.F.R. § 483.60 and 42 U.S.C. § 1396r(b)(3)(A);

    g. By failing, as a custom and policy, to provide dietary services that assured that Ms. Thomas received her daily

        nutritional dietary needs, as required by 42 C.F.R. § 483.60 and 42 U.S.C. § 1396r(b)(4)(A)(iv);

h.      By failing to maintain Ms. Thomas' medical records, as required by 42 C.F.R. § 483.70(i) and 42 U.S.C. § 1396r(b)(6)(C);

i.      By failing, as a custom and policy, to periodically review and revise a patient's or resident's written Plan of Care, including Ms. Thomas, by an interdisciplinary team after each of the resident's or patient's assessments, as described by 42 U.S.C. § 1396r(b)(3)(A), as required by 42 U.S.C. § 1396r(b)(2)(C);

j.      By failing, as a custom and policy, to conduct an assessment of a patient or resident, including Ms. Thomas, as required by 42 U.S.C. § 1396r(b)(3)(A), promptly after a significant change in the resident's physical or mental condition, as required by 42 U.S.C. § 1396r(b)(3)(C)(i)(II);

k.      By failing, as a custom and policy, to use the results of the assessments required as described above in developing, reviewing and revising Ms. Thomas' Plan of Care, as required by 42 U.S.C. § 1396r(b)(3)(D);

l.      By failing, as a custom and policy, to ensure that patients or residents, including Ms. Thomas, were provided medically related social services to attain or maintain the highest practicable physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.24 and 42 U.S.C. § 1396r(b)(4)(A)(ii);

m.      By failing, as a custom and policy, to ensure that the personnel responsible for the care of residents was properly certified and/or re-certified as being qualified to perform necessary nursing services, as required by 42 U.S.C. § 1396r(b)(4)(B);

n.      By failing, as a custom and policy, to provide sufficient nursing staff to provide nursing and related services that would allow patients or residents, including Ms. Thomas, to attain or maintain the highest practicable physical, mental and psycho-social well-being, as required by 42 C.F.R. § 483.35 and 42 U.S.C. § 1396r(b)(4)(C);

    o.    By failing, as a custom and policy, to maintain clinical records on all residents, including Ms. Thomas, including but not limited to the Plans of Care and resident's risk assessments, as required by 42 C.F.R. § 1396r(b)(6)(C);

    p.    By failing, as a custom and policy, to ensure that Westmoreland Manor was administered in a manner that enabled it to use its resources effectively and efficiently to allow patients or residents, including Ms. Thomas, to attain or maintain their highest practicable level of physical, mental and psycho-social wellbeing, as required by 42 C.F.R. § 483.70, 42 U.S.C. § 1396r(d)(A) and 42 U.S.C. § 1396r(d)(1)(A) and 42 U.S.C. § 1396r(d)(1)(C);

    q.    By failing, as a custom and policy, to ensure that the administrator of Westmoreland Manor met the standards established under 42 U.S.C. § 1396r(f)(4), as required by 42 U.S.C. § 1396r(d)(1)(C);

    r.    By failing, as a custom and policy, to ensure that Westmoreland Manor was complying with the federal, state, local laws and accepted professional standards which apply to professionals providing services to residents, including Ms. Thomas, and in operating such a facility as Westmoreland Manor, as required by 42 U.S.C. § 1396r(d)(4)(A); and,

    s.    By failing, as a custom and policy, to ensure that Westmoreland Manor's administrator and director of nursing properly monitored and supervised subordinate staff, thereby failing to ensure the health and safety of residents or patients, including Ms. Thomas, in derogation of 42 C.F.R. § 483.75 and 42 U.S.C. § 1396r(b)(B).

75.    In particular, and as further evidence that Defendant Westmoreland Manor's failures were systemic and part of a custom and policy, Defendant Westmoreland Manor had been cited numerous times between January of 2018 and September of 2018 for regulatory violations

directly relevant to the allegations in Plaintiff's Complaint.[1] The regulations at issue amplify the mandates of the FNHRA.

76. More specifically, Defendant Westmoreland Manor was cited for the following violations:

    1. Care planning (March 2018);

    2. Abuse/neglect (April 2018);

    3. Resident records (May and June 2018);

    4. Failure to train staff (September 2018);

    5. Resident rights (September 2018);

    6. Abuse/neglect (September 2018);

    7. Care planning (September 2018); and,

    8. Assessments (September 2018).

77. The aforementioned violations indicate that Defendant Westmoreland Manor, as a policy and/or custom and practice was deliberately indifferent to Ms. Thomas' needs, and as such, and in conjunction with other conduct described herein, deprived her of federally guaranteed and protected rights.

78. The repeated and systemic failures in the preceding paragraphs, combined with the failures identified in the paragraphs immediately above, demonstrate that Defendant Westmoreland Manor, as a custom and practice and/or policy, failed to adhere to the above statutes and regulations and/or, in the alternative, that Defendant Westmoreland Manor failed to implement and follow appropriate customs and policies and/or, in the alternative, that Defendant

---

[1] Plaintiff has not attached the citations to the instant Complaint as the citations are voluminous. However, the citations can be found on the Pennsylvania Department of Health's website under the search tab for facilities.

Westmoreland Manor had unwritten customs and policies that did not adhere to the applicable statutes and regulations.

79. As a proximate result of Defendant Westmoreland Manor's actionable derogation of its regulatory and statutory responsibilities as above-described, Plaintiffs' Decedent, Elizabeth Thomas, was injured as previously referenced and suffered pain and distress as a result of the poor care and treatment which allowed her to suffer harm, as described herein.

80. As such, Plaintiffs' Decedent, Elizabeth Thomas, suffered, and her Estate is now entitled to recover the following damages, as well as an award of reasonable counsel fees, pursuant to 42 U.S.C. 1983 and 42 U.S.C. § 1988:

   a. Money expended for hospital, medical, surgical, and nursing expenses incident to the injuries that Ms. Thomas suffered as a result of the treatment and care rendered by Defendants until the time of her death;

   b. Pain, suffering, embarrassment, humiliation, inconvenience, anxiety, loss of enjoyment of life and nervousness of Ms. Thomas; and,

   c. Other losses and damages permitted by law.

WHEREFORE, the Plaintiffs, Charles E. Thomas, Marsha Hall and Mark Thomas, Individually and as Co-Administrators of the Estate of Elizabeth M. Thomas, Deceased, demands compensatory damages from the Defendant Westmoreland County and Westmoreland County d/b/a Westmoreland Manor, in an amount in excess of Seventy-Five Thousand Dollars $75,000.00, plus interest, costs of suit and attorneys' fees.

## COUNT II

## **WRONGFUL DEATH**

81. All of the preceding Paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

82. As a direct and proximate result of Defendants' conduct as set forth above, Plaintiffs' Decedent, Elizabeth Thomas, was injured and suffered conscious pain and suffering before dying on February 8, 2019.

83. As a proximate result of the conduct of Defendant Westmoreland Manor, as aforementioned, Plaintiff Elizabeth M. Thomas, and those entitled by law to recover for the wrongful death of Elizabeth Thomas, seek damages as follows:

   a. They have expended money for surgical, nursing and hospital expenses related to the death of Ms. Thomas;

   b. They have expended money for funeral and Estate expenses because of the death of Ms. Thomas;

   c. They have been denied, and have forever lost the services, assistance, guidance, counseling, companionship of society of Ms. Thomas; and,

   d. They have been, and will forever be, deprived of the financial support and all pecuniary benefits which they would have received from Ms. Thomas.

WHEREFORE, the Plaintiffs, Charles E. Thomas, Marsha Hall and Mark Thomas, Individually and as Co-Administrators of the Estate of Elizabeth M. Thomas, Deceased, demands compensatory damages from the Defendant Westmoreland County and Westmoreland County d/b/a Westmoreland Manor, in excess of Seventy-Five Thousand Dollars $75,000.00, plus interest, costs of suit and attorneys' fees.

**A JURY TRIAL IS DEMANDED**.

Respectfully submitted,

By: /s/ Max Petrunya

MAX PETRUNYA, ESQUIRE
Pa. I.D. No.: 309122

MAX PETRUNYA, P.C.
5 Bayard Rd. Unit 917
Pittsburgh, PA 15213
(412) 720-3497
maxpetrunyapc@gmail.com

15