# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KALAHARI RESORTS, LLC and KALAHARI RESORTS PA, LLC, d/b/a Kalahari Resorts & Conventions; and THE WOODLANDS AT ST. BARNABAS d/b/a Conley Resort and Golf,<br><br>Plaintiffs,<br><br>v.<br><br>THE HON. THOMAS W. WOLF, in his official capacity as the Governor of the Commonwealth of Pennsylvania; and DR. RACHEL LEVINE, in her official capacity as the Secretary of the Pennsylvania Department of Health,<br><br>Defendants. | CIVIL ACTION<br><br>Case No.: _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### *Introduction*

1. "There is ***no evidence*** that COVID-19 can be spread to humans through the use of recreational waters."[1]



---

[1] The following screen shot was taken from the CDC website on December 12, 2020 located at https://www.cdc.gov/coronavirus/2019-ncov/community/parks-rec/aquatic-venues.html. (emphasis added).

- 1 -

2. That includes "waterparks." *Id.*

3. This is a photo of Plaintiff, Kalahari's, indoor waterpark in the Poconos:[2]



4. This is a photo of Kalahari following CDC guidelines:[3]



---

[2] The following screen shot was taken from Kalahari's website on December 12, 2020 located at http://kalaharimedia.com/gallery-category/poconos-images/#view.
[3] The following screen shot was taken from Kalahari's website on December 12, 2020 located at http://kalaharimedia.com/gallery-category/poconos-images/#view.

- 2 -

5.  This is a photo of Plaintiff, St. Barnabas's, "Pirate's Cove:"[4]



6.  Despite the fact that the CDC says there is "***no evidence*** that COVID-19 can be spread to humans through the use of recreational waters" at waterparks, the Governor of Pennsylvania and Secretary of Health have again ordered Plaintiffs to shut down their indoor waterparks and pool facilities.

7.  Defendants' stated governmental interest is to reduce person-to-person contact as a means to slow and eliminate the spread of COVID-19 infections within the Commonwealth of Pennsylvania.

8.  However, Defendants' Shutdown Orders permit other businesses to continue operations when such businesses have similar, if not greater, person-to-person contact and have significantly higher rates of infection associated with their business operations.

---

[4] The following screen shot was taken from Conley's website on December 12, 2020 located at https://www.conleyresort.com/pirates-cove/.

9. Defendants' rationale for permitting other businesses to continue business operations is not the lack of person-to-person contact associated with the other businesses

10. Rather, Defendants' inexplicable position is that other businesses can continue to operate if mitigation efforts are implemented – while at the same time – Defendants shut down Plaintiffs' business operations without consideration of Plaintiffs' demonstrated ability to effectively implement the same mitigation measures.

11. Plaintiffs have successfully implemented, and will continue to successfully implement, the same mitigation measures that Defendants have asked other businesses to implement, in exchange for Defendants permitting them to continue their business operations.

12. Defendants severe treatment of Plaintiffs' business operations, while granting preferential treatment to other businesses, is unsupported in fact and law.

13. Defendants' Shutdown Orders treat Plaintiffs' waterpark business operations differently by requiring them to shut down while other businesses are allowed to continue to operate at 50% capacity or greater.

14. Defendants' Shutdown Orders and actions violate Plaintiffs' equal protection, substantive due process, and procedural due process rights.

### *Jurisdiction and Venue*

15. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988.

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

17. This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

18. This Court has personal jurisdiction over the named individual Defendants – who are sued in their official capacities only.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

*Parties*

20. Plaintiff, The Woodlands at St. Barnabas owns, operates, and does business as Conley Resort and Golf, is a Pennsylvania nonprofit corporation with a principal place of business at 740 Pittsburgh Road, Butler, Butler County, PA 16002 ("St. Barnabas").

21. Plaintiff, Kalahari Resorts, LLC, is a Delaware limited liability company, with a principal place of business at 250 Kalahari Boulevard, Pocono Manor, Monroe County, PA 18349.

22. Plaintiff, Kalahari Resorts PA, LLC, is a Delaware limited liability company, with a principal place of business at 250 Kalahari Boulevard, Pocono Manor, Monroe County, PA 18349.

23. Plaintiffs, Kalahari Resorts, LLC and Kalahari Resorts PA, LLC, own, operate, and do business as "Kalahari Resorts & Conventions," located in Monroe County, Pennsylvania, with a principal place of business at 250 Kalahari Boulevard, Pocono Manor, Monroe County, PA 18349 ("Kalahari").

24. Defendant, The Honorable Thomas W. Wolf, is the Governor of the Commonwealth of Pennsylvania, with a principal office address at the Office of the Governor, 508 Main Capitol Building, Harrisburg, Dauphin County, PA, 17120 ("Governor Wolf").

25. Defendant, Dr. Rachel Levine, is the Secretary of Health of the Commonwealth of Pennsylvania with a principal office address at Pennsylvania Department of Health, Health and Welfare Building, 8th Floor West, 625 Forster Street, Harrisburg, Dauphin County, PA, 17120 ("Secretary Levine").

26. Defendants are sued in their official capacities.

*Factual Background*

**A.     The December 12th Shutdown Orders.**

27.     On December 10, 2020, Governor Wolf announced a new shutdown order effective December 12, 2020 at 12:01 a.m. A copy of the order is attached and incorporated by reference as if fully set forth at length herein as Exhibit "A."

28.     On December 10, 2020, Secretary Levine contemporaneously announced a new shutdown order that mirrors Governor Wolf's order. A copy of the order is attached and incorporated by reference as if fully set forth at length herein as Exhibit "B."

29.     Governor Wolf and Secretary Levine's orders will be referred to collectively herein as the "Shutdown Orders."

30.     Governor Wolf cited his authority to issue his order pursuant to 35 Pa.C.S. § 7301(a).

31.     Governor Wolf also authorized Secretary Levine to institute "general control measures, including, but not limited to, closure, isolation, and quarantine." *See* Ex. A.

32.     Secretary Levine's order mirrors Governor Wolf's. *See* Ex. B.

33.     Due to the nature of Plaintiffs' operations, the Shutdown Orders directly impact Plaintiffs under at least the following sections:

        a.     Section 1: Definition of "Gatherings and events,"

        b.     Section 2: "In-person Dining and Alcohol Sales,"

        c.     Section 3: "Indoor Gatherings and Events,"

        d.     Section 4: "Outdoor Gatherings and Events,"

        e.     Section 5: "Capacity Limits for Businesses,"

        f.     Section 6: "Gyms and Fitness Facilities," and

        g.      Section 7: "Entertainment Industry."[5]

34.    Below are screen shots of the Shutdown Orders:

> "Gatherings and events" mean a temporary grouping of individuals for defined purposes, that takes place over a limited timeframe, such as hours or days. For example, events and gatherings include fairs, festivals, concerts, or shows and groupings that occur within larger, more permanent businesses, such as shows or performances within amusement parks, individual showings of movies on a single screen/auditorium within a multiplex, business meetings or conferences, or each party or reception within a multi-room venue. Classroom instruction by school entities is not a "gathering" or "event" for purposes of this Order. Nor is a meeting of electors, including any preparation, to perform the duties enjoined upon them by the Constitution and the laws of the Commonwealth and of the United States a "gathering" or "event" for purposes of this Order.

**Section 2: In-person Dining and Alcohol Sales**

    A. All in-person indoor dining at businesses in the retail food services industry, including, but not limited to, bars, restaurants, breweries, wineries, distilleries, social clubs, and private catered events is prohibited.

    B. Outdoor dining, take-out food service and take-out alcohol sales are permitted and may continue, subject to any limitations or restrictions imposed by Pennsylvania law, or this or any other Order issued by me or by the Secretary of Health.

**Section 3: Indoor Gatherings and Events**

    A. Indoor gatherings and events of more than 10 persons are prohibited.

    B. Churches, synagogues, temples, mosques and other places of congregate worship are specifically excluded from the limitations set forth above during religious services. These institutions are strongly encouraged to enforce physical distancing and other mitigation measures at their gatherings.

    Conventions, retreats, and other gatherings that may be sponsored or held by these religious entities that are not the actual worship service are required to comply with this Order.

**Section 4: Outdoor Gatherings and Events**

    Outdoor gatherings and events of more than 50 persons are prohibited.

**Section 5: Capacity Limits for Businesses**

    All in-person businesses serving the public within a building or defined area may only operate at up to 50% of the maximum capacity stated on the applicable certificate of occupancy, except as limited by existing orders to a smaller capacity limit.

**Section 6: Gyms and Fitness Facilities**

    Indoor operations at gyms and fitness facilities are prohibited. Outdoor operations may continue, but all participants must wear face coverings in accordance with the Secretary of Health's Updated Order Requiring Universal Face Coverings, including any subsequent amendments, and practice physical distancing requirements.

**Section 7: Entertainment Industry**

    All in-person businesses in the entertainment industry serving the public within a building or indoor defined area, including, but not limited to, theaters, concert venues, museums, movie theaters, arcades, casinos, bowling alleys, private clubs, and all other similar entertainment, recreational or social facilities, are prohibited from operation.

---

[5] Plaintiffs dispute that they uniformly fit into any of these above categories, however, they are affected at least by these definitions.

**B.     CDC Guidelines for Aquatic Venues.**

35.     The CDC has issued comprehensive guidelines related to COVID-19.

36.     Part of those guidelines includes "Consideration for Aquatic Venues."

37.     According to the CDC guidelines, "[t]here is no evidence that COVID-19 can spread to humans through the use of recreational waters." *See* https://www.cdc.gov/coronavirus/2019-ncov/community/parks-rec/aquatic-venues.html.

38.     The CDC expressly includes "waterparks." *Id.*

39.     In addition to Consideration for Aquatic Venues, Plaintiffs' follow all other CDC guidelines to ensure the safety of their employees and guests when operating their facilities.

40.     Plaintiffs' compliance with CDC guidelines is more thoroughly set forth below.

**C.     Kalahari Resorts & Conventions.**

41.     Kalahari's main offices are located in Wisconsin Dells, Wisconsin.

42.     Kalahari is family owned and operates four of the largest indoor waterpark resorts in the United States.

43.     Kalahari's Pennsylvania location is in the Poconos (the "PA Resort").

44.     The PA Resort:

   a.     is over 1.4 million square feet,

   b.     features 977 guest rooms,

   c.     has a 260,000 square foot waterpark,[6]

   d.     has a 110,000 square foot outdoor waterpark,

   e.     has 14 food and beverage locations,

   f.     has a 205,000 square foot meeting space for conventions,

   g.     has a spa and fitness center,

---

[6] This square footage includes the "back of the house."

- 9 -

      h.    has several stores,

      i.    has an arcade,

      j.    has a treetop adventure center,

      k.    has a 7-D motion theater,

      l.    has mini golf courses, and

      m.    has an escape room.

45.    Kalahari's claims are related to the shutdown of its indoor waterpark at the PA Resort.

46.    Kalahari is ready, willing, and able to continue to operate all of its other businesses in compliance with the CDC guidelines, as it has safely done for months.

47.    As part of the operations of the indoor waterpark at the PA Resort:

      a.    the occupancy is 6,969,

      b.    the air circulation recycles multiple times every hour,

      c.    guests are required to wear masks, or face shields, as demonstrated by the photos above.[7]

48.    Since the initial shutdown in March of 2020 and subsequent reopening, Kalahari has done a tremendous job implementing the COVID-19 guidelines and mitigation measures to make all their properties, including the indoor waterpark at the PA Resort, fully compliant with CDC and Department of Health mitigation recommendations.

49.    Kalahari's CDC compliance efforts, include but are not limited to the following:

      a.    participated in frequent video calls to discuss operating in a safe manner;

      b.    separated HVAC units for each guest room;

      c.    discussed safety with other similarly situated companies;

---

[7] Guests are not required to wear masks when in the water or an attraction. This exception is consistent with CDC guidelines, which advise not to wear masks in the water because they can be difficult to breathe through when they are wet. *See* https://www.cdc.gov/coronavirus/2019-ncov/community/parks-rec/aquatic-venues.html.

      d.      installed hand sanitizer stations and plexiglass barriers;

      e.      removed high touch items from guest rooms;

      f.      enhanced cleaning protocols;

      g.      enforced masks and social distancing;

      h.      encouraged handwashing;

      i.      required employees to undergo COVID training that included OSHA and CDC requirements;

      j.      created family friendly values agreements that require guests to agree to comply with all CDC guidelines;

      k.      created a hotline for employees and guests to report non-compliance with COVID safety;

      l.      utilized social distance monitors and wellness concierges to enforce CDC requirements;

      m.      partnered with Pocono Promise;[8]

      n.      installed an employee temperature scanner; and

      o.      purchased hospital-grade disinfectant.

50. A comprehensive guide can also be found on Kalahari's website located at: https://www.kalahariresorts.com/what-we-are-doing-to-ensure-a-safe-getaway/.

51. Kalahari also put together its "Commitment to Clean" Program. A copy of some of the documents that encompass this program are attached and incorporated by reference as if fully set forth at length herein as Exhibit "C."

52. To date, based upon information and belief, Defendants have not traced any person-to-person COVID-19 infection to Kalahari's business operation at the PA Resort.

53. Further, the CDC has clearly stated "[t]here is no evidence that COVID-19 can be spread to humans through the use of recreational waters," and based upon information and belief,

---

[8] https://www.poconomountains.com/about-the-pocono-mountains/pocono-promise/#our-promise-to-you.

Defendants' recent Shutdown Orders were not issued based upon contact tracing or infection data within the Commonwealth to the contrary.

54. Despite Kalahari's comprehensive COVID-19 protocol, the Shutdown Orders once again prevent Kalahari from operating their indoor waterpark at the PA Resort during one of their most profitable times of the year.

55. As a result of the Shutdown Orders Kalahari has:

    a. projected monetary losses well in excess of $10 million;

    b. cancelled bookings;

    c. suffered damage to its reputation (i.e. by cancelling their guests' bookings with almost no notice); and

    d. been forced to prevent employees from working, which may lead to their eventual termination.

56. Without being allowed to operate until at least January 4, 2021, Kalahari:[9]

    a. will forever lose business during that time period;

    b. will operate at a substantial loss; and

    c. may be forced to lay off employees.

**D. St. Barnabas.**

57. Like Kalahari, St. Barnabas has an indoor waterpark facility.

58. Due to Defendants' Shutdown Orders, St. Barnabas cannot operate its "Pirate's Cove" indoor waterpark for the same reasons as listed for Kalahari above.

59. St. Barnabas also fully complies with current CDC guidelines regarding COVID-19 protocols.

---

[9] Plaintiffs believe that the Shutdown Orders may be extended, further harming their businesses.

60. Despite compliance with CDC guidelines and other mitigation efforts, the Shutdown Orders prevent St. Barnabas from operating Pirate's Cove.

**E.    Violation of Plaintiffs' Constitutional Rights.**

61. The Shutdown Orders arbitrarily affected Plaintiffs' businesses while others are allowed to remain open.

62. Any business that is not considered a "Gym and Fitness Facilit[y]" or an "Entertainment Industry," is allowed to operate at 50% capacity under the Shutdown Orders.

63. Many of the non-Entertainment Industry businesses that have been granted favorable treatment under Defendants' Orders have equal, or greater, person-to-person contact.

64. Defendants' Shutdown Orders permit countless patrons to walk the narrow shopping aisles of retail stores, such as: Walmart, Sam's Club, Home Depot and their local malls, but prohibit any patron from swimming in Plaintiffs' waterparks and pools.

65. Defendants' Shutdown Orders permit families to engage in countless indoor activities, such as: shopping together, attending church together, and going to work together – all of which bring family members into contact with other persons – but Defendants' Orders prohibit the same family members from enjoying time together at Plaintiffs' waterparks.

66. Even restaurants, while heavily restricted, can continue to operate for take-out food service and take-out alcohol sales under the Shutdown Orders.

67. But, Plaintiffs' are prevented from operating due to an arbitrary and unexplained classification created by Governor Wolf and Secretary Levine in the Shutdown Orders.

68. Plaintiffs' businesses have been classified as "Entertainment Industr[ies]," along with "theaters, concert venues, museums, movie theaters, arcades, casinos, bowling alleys, [and] private clubs."

69. In fact, these other businesses are so unlike Kalahari's indoor waterpark that after initially reading the Shutdown Orders, Kalahari felt that its indoor waterpark could be considered a "Business Serving the Public," and asked a Pocono tourism representative to contact Governor Wolf's office for clarification.

70. On December 10, 2020, Governor Wolf's Deputy Chief of Staff, Elena Cross ("Ms. Cross") responded via email definitively stating that Kalahari was considered an "Entertainment Industry" as defined in the Shutdown Orders.

71. In her email, Ms. Cross confirmed that Kalahari was included as "indoor entertainment," and was required to close from December 12, 2020 through January 4, 2021.

72. This disparate treatment of Plaintiffs' businesses is readily apparent because Defendants failed to take into consideration the nature of Plaintiffs' businesses and their comprehensive compliance with CDC guidelines.

73. Notably, the CDC states that "[t]here is no evidence that COVID-19 can be spread to humans through the use of recreational waters."

74. The Shutdown Orders failed, at a minimum, to take CDC guidelines into consideration before preventing Plaintiffs from being able to operate their businesses.

75. Plaintiffs are currently adhering to CDC guidelines regarding COVID-19 in Pennsylvania and other states, and were operating safely in Pennsylvania up until December 12, 2020.

76. This includes all CDC guidelines.

77. Plaintiffs were taking the safety of their guests seriously, but their efforts were usurped by the Shutdown Orders.

78. The Shutdown Orders conflate Plaintiffs' businesses with ones that are not similarly situated and treat Plaintiffs' businesses in a different manner than similarly situated businesses without any rational basis.

79. The Shutdown Orders deprive Plaintiffs of their ability to operate their businesses.

80. The Shutdown Orders failed to provide Plaintiffs with any opportunity to challenge their contents or restrictions.

### COUNT I – ALL PLAINTIFFS v. ALL DEFENDANTS
### Violation of Equal Protection

81. Plaintiffs incorporate the foregoing paragraphs as though the same were fully set forth at length herein.

82. The Equal Protection Clause requires governments to act in a rational and non-arbitrary fashion.

83. The Equal Protection Clause prevents a particular class of individuals from being denied the ability engage in an activity that other similarly situated individuals are allowed to engage in.

84. Defendants have prevented Plaintiffs from operating their businesses from December 12, 2020 until at least January 4, 2021.

85. Defendants' conduct with regard to the Shutdown Orders violates the Equal Protection Clause of the 14th Amendment to the United States Constitution.

86. Defendants' conduct allows other businesses to operate, but prohibits Plaintiffs from operating.

87. This constitutes disparate treatment.

88. Defendants' Shutdown Orders demonstrate an arbitrary decision making process that allows some businesses to operate, but not others, including Plaintiffs' businesses.

89. Defendants' actions deprive Plaintiffs of their constitutional rights in violation of the Equal Protection Clause.

### COUNT II – ALL PLAINTIFFS v. ALL DEFENDANTS
**Substantive Due Process**

90. Plaintiffs incorporate the foregoing paragraphs as though the same were fully set forth at length herein.

91. Substantive Due Process prevents the government from engaging in conduct that "shocks the conscious" or that interferes with the concept of ordered liberty.

92. The Shutdown Orders issued by Defendants constitute arbitrary, capricious, irrational, and abusive conduct that interferes with Plaintiffs' liberty and property interests protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

93. Defendants' actions constitute official policy, custom, and practice of the Commonwealth of Pennsylvania.

94. Defendants' actions shock the conscience of the citizens of the Commonwealth.

95. Defendants' actions do not comport with the traditional ideas of fair play and decency.

96. Plaintiffs have the right to operate their businesses free from governmental interference, and the Shutdown Orders prevent Plaintiffs from doing so.

### COUNT III – ALL PLAINTIFFS v. ALL DEFENDANTS
**Procedural Due Process**

97. Plaintiffs incorporate the foregoing paragraphs as though the same were fully set forth at length herein.

98. The Fourteenth Amendment to the United States Constitution forbids a state from depriving anyone of life, liberty, or property without due process of law.

99. There is no process administered in Pennsylvania for Plaintiffs to challenge the Shutdown Orders.

100. Defendants did not permit Plaintiffs an opportunity to:

    a. request an exemption to the Shutdown Orders,

    b. have an evaluation by a neutral arbitrator,

    c. present witnesses,

    d. cross examine witnesses, or

    e. appeal.

101. The Shutdown Orders do not provide due process protections.

102. The Shutdown Orders classification of Plaintiffs' as Entertainment Industries constitutes an unexplained inconsistency with CDC guidelines and is arbitrary and capricious.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. a Declaratory Judgment that the actions of the Defendants, including, but not limited to their Shutdown Orders, are unlawful and unconstitutional;

2. a declaration that the rights of Plaintiffs have been violated by the actions of the Defendants and that the Defendants are enjoined from engaging in such violations and declaring them to be null and void, *ab initio*;

3. a Temporary Restraining Order to enjoin Defendants from prohibiting Plaintiffs from being able to operate within CDC guidelines through January 4, 2021;

4. a Permanent Injunction to indefinitely bar Defendants from arbitrarily prohibiting Plaintiffs from being able to operate their businesses;

5. an award of costs and expenses, including reasonable attorneys' fees, under 42 U.S.C. §§ 1983 and 1988; and,

6. such other relief as this Court deems appropriate.

- 17 -

                                          Respectfully Submitted,

                                          **DILLON, MCCANDLESS, KING,**
                                          **COULTER & GRAHAM, LLP**

Dated: <u>December 13, 2020</u>         By: <u>/s/ Thomas W. King, III</u>
                                                      Thomas W. King, III
                                                      PA. I.D. No. 21580
                                                      tking@dmkcg.com
                                                      Thomas E. Breth
                                                      PA. I.D. No. 66350
                                                      tbreth@dmkcg.com
                                                      Jordan P. Shuber
                                                      PA. I.D. No. 317823
                                                      jshuber@dmkcg.com

                                          *Counsel for Plaintiffs*